*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0363p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

No. 07-1758

>

JERMAIN MARVIN ALEXANDER,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00312—Gordon J. Quist, District Judge.

Argued: September 16, 2008

Decided and Filed: October 7, 2008

Before: DAUGHTREY, GILMAN, and ALARCÓN, Circuit Judges.[*]

---

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. B. Rene Shekmer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

    RONALD LEE GILMAN, Circuit Judge. Jermain Marvin Alexander pled guilty to one count of possessing crack cocaine with the intent to distribute the drug. The district court sentenced him to 360 months in prison, to be followed by five years of supervised release. Alexander contends for the first time on appeal that the district court erred by adopting the Presentence Report's (PSR's) finding that he was a "career offender." He also argues that his sentence was both procedurally and substantively unreasonable. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable Arthur L. Alarcón, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

# I. BACKGROUND

In December 2006, Alexander was charged with possessing more than 50 grams of crack cocaine with the intent to distribute the drug. He pled guilty to that offense in late January 2007 before a magistrate judge and, approximately one month later, the district court accepted his plea. Alexander then requested that he be allowed to remain free on bond before his sentencing hearing. He argued that he was neither a danger to the community nor likely to flee, at least in part because he was receiving dialysis three times a week for an incurable, life-threatening condition called End-Stage Renal Disease. Alexander also noted that he suffers from congestive heart failure. The district court approved the recommendation of the magistrate judge to accept Alexander's request to remain free on bond. While Alexander was out on bond, however, he was arrested again for offenses involving the distribution of crack and the possession of marijuana. The government responded by filing a motion to revoke his bond. Alexander's sentencing hearing occurred before the district court had the opportunity to rule on the motion.

Before sentencing, Alexander filed a memorandum arguing that he should receive a lenient sentence under the factors set forth in 18 U.S.C. § 3553(a), and that he should receive a reduction in his offense level for having accepted responsibility for his actions by pleading guilty. At Alexander's sentencing hearing in June 2007, the district court imposed a 360-month term of imprisonment, five years of supervised release, and a $100 special assessment. The sentence reflects the PSR's determination that Alexander was a career offender. Alexander did not initially object to this determination. Indeed, his counsel conceded that he was in fact a career offender. The only objection expressly raised after the court imposed the sentence was that Alexander should have received credit for accepting responsibility for his crimes. This objection was overruled by the court on the basis that Alexander's arrest while he was free on bond indicated that he had not actually accepted such responsibility. Alexander timely appealed.

# II. ANALYSIS

## A.    Standard of review

We review a district court's sentencing determination "under a deferential abuse-of-discretion standard" for reasonableness, which has both a procedural and a substantive component. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). This court must first ensure that the district court committed no procedural error. *Id.*; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). A district court necessarily abuses its sentencing discretion if it

> commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall*, 128 S. Ct. at 597.

If, and only if, the district court's sentencing decision is procedurally sound, we will "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . tak[ing] into account the totality of the circumstances . . . ." *Id.* District courts are charged with imposing "a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a); *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). This court also applies a rebuttable presumption of reasonableness for sentences within the Guidelines range. *United States v. Heriot*, 496 F.3d 601, 608 (6th Cir. 2007); *see also Gall*, 128 S. Ct. at 597 ("If the sentence is within the Guidelines range, the appellate court may . . . apply a presumption of reasonableness." (citing *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007)).

Furthermore, "[i]f a party does not clearly articulate any objection and the grounds upon which the objection is based, when given [a] final opportunity [to] speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal." *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). To establish that a plain error has occurred,

> a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected [the] defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.

*United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

## B.     Career-offender status

The Guidelines define a person as a career offender where (1) he or she is at least 18 years old at the time the instant offense was committed, (2) the offense is a felony that is either a crime of violence or a controlled-substance offense, and (3) the defendant has at least two such prior convictions. U.S.S.G. § 4B1.1(a).

Alexander does not contest that he is at least 18 years old, or that he was convicted for a controlled-substance offense in the present case. Nor does he contest that he has an earlier conviction for the delivery/manufacture of cocaine, which is a controlled-substance offense that establishes one of the two prior felony convictions required by the third prong of the career-offender Guideline. Alexander argues instead that the other predicate offense, which the PSR used to classify him as a career offender, is not properly classified as a crime of violence. The district court thus purportedly erred by relying on a faulty PSR in designating Alexander as a career offender. The government responds that the PSR is not faulty, and that Alexander has in fact been convicted of violating Mich. Comp. Laws Ann. § 750.81d(2) (West 2008), which in turn defines a crime of violence. We have concluded that the government is correct.

As a threshold matter, we note that Alexander did not bring this purported procedural error to the district court's attention during sentencing. Indeed, defense counsel conceded during the sentencing hearing that Alexander was a career offender. We will not, therefore, set aside the district court's sentence unless the court plainly erred in so designating Alexander. *See Bostic*, 371 F.3d at 872-73. This plain-error inquiry thus turns on whether Alexander has a prior conviction for committing a crime of violence.

Pursuant to U.S.S.G. § 4B1.2(a), a crime of violence is any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Under applicable Supreme Court precedent, we take a so-called "categorical approach" to determine whether a particular offense constitutes a crime of violence. *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008) (citing *Taylor v. United States*, 495 U.S. 575, 601 (1990)). This approach requires that we "look only to the fact of conviction and the statutory definition—not the facts

underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence." *Bartee*, 529 F.3d at 359. If this initial inquiry is indeterminate, further inquiry "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

The government contends that Alexander has been convicted of violating M.C.L.A. § 750.81d(2), which clearly defines a crime of violence. Under that statute,

> [a]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties *causing a bodily injury requiring medical attention or medical care* to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

(Emphasis added.) Looking exclusively at the statutory definition of the offense, the plain language of this provision indicates that "causing bodily injury" is an element of the crime as defined by M.C.L.A. § 750.81d(2). Violating this statute would therefore entail committing a crime of violence because the element of "causing bodily injury" involves both the "use of physical force against the person of another" (U.S.S.G. § 4B1.2(a)(1)) and "conduct that presents a serious potential risk of physical injury to another" (U.S.S.G. § 4B1.2(a)(2)). Indeed, a conviction under M.C.L.A. § 750.81d(2) requires more than simply a "risk" of physical injury; a conviction requires causing an *actual* physical injury sufficiently severe to require medical care. If Alexander was in fact convicted under that statute, he would have necessarily committed a crime of violence.

The PSR does not clearly define the statutory basis for Alexander's purported crime of violence. In particular, the PSR states ambiguously that he committed the offense of "Police Officer – Assault, Resist, & Obstruct." Alexander latches on to this ambiguity and argues that this description of the offense does not refer to a crime of violence. *See Begay v. United States*, 128 S. Ct. 1581, 1583, 1586 (2008) (holding that a New Mexico statute making it a crime to drive under the influence of alcohol was not a "violent felony" under the Armed Career Criminal Act because the crime did not necessarily involve "purposeful, violent, and aggressive conduct") (internal quotation marks omitted); *see also Bartee*, 529 F.3d at 360, 362-63 (remanding, in light of *Begay*, the question of whether the defendant had committed a crime of violence under the Guidelines for violating a statute prohibiting sexual contact with a minor because the offense did not unambiguously involve "a serious potential risk of physical injury").

The government replies by citing publicly viewable criminal-history records indicating that Alexander was in fact convicted for violating M.C.L.A. § 750.81d(2)—i.e., a provision which, unlike the statutes at issue in *Begay* and *Bartee*, unambiguously defines a crime of violence because the offense involves causing an actual physical injury. *See* Dep't of Corrections No. 303682, Michigan Department of Corrections Offender Tracking Information System (OTIS), http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=303682) (indicating that Alexander pled guilty to "Assaulting/Resisting/Obstructing/Causing Injury" in violation of M.C.L.A. § 750.81d(2)).

Alexander has never questioned the accuracy or reliability of his OTIS profile. Moreover, we note that Alexander's OTIS records are consistent with the criminal-history records made available by the Michigan State Police. *See* Michigan State Police, Internet Criminal History Access Tool, *https://apps.michigan.gov/ICHAT/Home.aspx* (last visited Oct. 2, 2008). Thus, even if the record is not entirely clear about the precise statutory offense that served as one of the predicate crimes, any ambiguity is readily resolved by taking judicial notice of Alexander's criminal-history records. *See* Fed. R. Evid. 201(b)(2) ("A judicially noticed fact must be one not subject to

reasonable dispute," including facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")

The criminal-history records maintained in the databases listed above constitute facts that are not subject to reasonable dispute in this case. Alexander's conspicuous failure to directly contest the government's contention that he was convicted for committing an offense under M.C.L.A. § 750.81d(2) only buttresses this finding. Because Alexander has committed a prior crime of violence, and because he otherwise satisfies the criteria necessary to be considered a career offender, the district court did not commit a plain error in so designating him.

## C.      Reasonableness of Alexander's sentence

### 1.      *Procedural reasonableness*

Turning now to the reasonableness of his sentence, Alexander argues that it is procedurally unreasonable because the district court failed to address certain issues that he allegedly raised during the sentencing hearing. But the only objection that Alexander actually raised during the hearing (apparently abandoned on appeal) was that the sentence should have been lower because he accepted responsibility for the crime by pleading guilty. The three objections that Alexander presents in his brief are thus raised for the first time on appeal. This means that we will not set aside the district court's sentence unless these purported procedural errors are "plain." *See United States v. Vonner*, 516 F.3d 382, 386 (2008) (concluding that failing to object to the court's explanation of the defendant's sentence "undermine[s] [a defendant's] right to challenge the . . . explanation" on appeal, and concluding that this court should therefore apply plain-error review to the explanation).

First, Alexander argues that the district court erred by not responding to Alexander's assertion that "the predicate offenses that resulted in Mr. Alexander['s] being classified a career offender were very minor." But the district court did, in fact, observe that although none of his prior crimes would be considered "very serious," his lengthy criminal history suggested "a life of constant crime" and that he had not "learned his lesson" from the light sentences that he had previously received. The court further explained that long-term incarceration was "the only way to deter this particular defendant," noting not only Alexander's tendency to fight with police and resist arrest, but also his arrest while out on bond pending trial. There is every indication that, with respect to this argument, "the sentencing judge listened . . . , considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Vonner*, 516 F.3d at 387 (citing *Rita*, 127 S. Ct. at 2469) (internal quotation marks omitted). The district court's explanation is not so lacking as to be "obvious or clear" that a plain error has occurred. *See Koeberlein*, 161 F.3d at 949.

Second, Alexander argues that the district court inadequately explained its consideration of the crack/powder cocaine disparity. The court opined, however, that "they might change the law regarding crack/powder ratios and then we may have to . . . resentence 30,000 people . . .[,] so we will be very very busy doing that if that occurs." The Sentencing Commission has indeed changed the Guidelines in a manner that has retroactively lowered the recommended sentencing ranges for several crack-cocaine offenses. *See United States v. Poole*, 538 F.3d 644 (6th Cir. 2008) (remanding for resentencing based on retroactive amendments to the Guidelines).

But these amendments do not help Alexander because the sentencing range applied to his case is derived exclusively from the Guidelines' unamended career-offender provision set forth in U.S.S.G. § 4B1.1(a), not the amended drug-quantity table listed at U.S.S.G. § 2D1.1. The district court's discussion of the crack/cocaine disparity therefore had no effect on Alexander's sentence.

Finally, Alexander argues that district court did not adequately explain why it refused to take into account Alexander's congestive heart failure and his renal disease. But this court has made

clear "that a district court may exercise discretion in determining how much explanation is necessary, and that 'when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation.'" *United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008) (quoting *Rita*, 127 S. Ct. at 2468). The district court did in fact take into account Alexander's health, indicating that Alexander might actually benefit from long-term incarceration because he would be guaranteed health care in prison. Moreover, the court remarked that Alexander had already abused the leniency shown to him by committing new crimes while out on bond. The district court further imposed a sentence that was at the low end of the sentencing spectrum based on Alexander's status as a career offender, which presumably took into account Alexander's health problems. These remarks therefore reflect the district court's full consideration of Alexander's circumstances and do not justify a finding that the court plainly erred.

### 2.     *Substantive reasonableness*

Alexander next challenges the substantive reasonableness of his sentence. In evaluating this issue, we apply a presumption of reasonableness for within-Guidelines sentences. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). Alexander argues that his sentence is too long despite receiving the lowest sentence suggested by the Guidelines range given his career-offender status (360 months of imprisonment). Alexander has neither rebutted this presumption of reasonableness nor demonstrated that the district court abused its discretion in so sentencing him.

The first argument raised by Alexander is that his 360-month prison term does little to protect the community from crack cocaine dealers because others stand ready to fill his shoes. As formulated, this argument proves too much, suggesting that all similarly situated drug dealers should receive below-Guidelines sentences because there will always be others eager to replace them. Alexander's rationale is bereft of legal support, and the district court committed no substantive error in rejecting it.

Second, Alexander argues that his criminal history is of a "petty nature" that justifies a sentence much lower than 360 months of imprisonment, a sentence that would be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing as set forth in 18 U.S.C. § 3553(a)(2). But Alexander is still a career offender—regardless of whether he characterizes his prior felony convictions as "petty." Indeed, despite being a career offender, and despite having already abused the district court's leniency when committing other drug-related offenses while out on bond, Alexander was sentenced at the low end of the recommended Guidelines range. This suggests that the court was mindful of *both* the "nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). Alexander has not persuaded us that the district court abused its discretion by imposing a sentence that is greater than necessary to effectuate the purposes of sentencing.

Finally, Alexander renews his crack/powder argument as an objection to the substantive reasonableness of the sentence. But this objection is without merit because his sentence was based upon his status as a career offender, not because of the nature of his drug offense.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.