NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0258n.06
Filed: April 3, 2009

**No. 08-1541**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | APPEAL FROM THE DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| BRIAN BASS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: KETHLEDGE and WHITE, Circuit Judges; and POLSTER, District Judge.[*]

**Dan Aaron Polster, District Judge.** After Brian Bass pled guilty to being a felon in possession of stolen firearms, the district court sentenced him to 96 months' imprisonment. Bass challenges the procedural and substantive reasonableness of the district court's sentence. For the following reasons, we affirm.

**I.**

During a two-month period in the summer of 2006, Bass, his younger brother and others broke into residences in Michigan and Indiana and stole items including firearms which they subsequently pawned. Bass used his portion of the proceeds to support his ever-increasing crack cocaine habit. On June 6, 2007, he was charged with two counts of being a felon in possession of

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

firearms and two counts of possessing stolen firearms.[1] He was ordered detained pending trial. On August 31, 2007, Bass, represented by counsel, pled guilty to all counts without the benefit of a plea agreement in order to preserve his appellate rights.

On September 6, 2007, Bass was released from custody on an unsecured appearance bond, subject to electronic monitoring and standard conditions including no use of alcohol. Three months later, however, Bass was found to have consumed alcohol with a breathalyzer rating of .212. He was instructed to report to the U.S. Probation Office on January 11, 2008, at which time he showed up with a breathalyzer rating of .123. Bond was revoked shortly thereafter.

After resolving Bass' objections to the initial presentence report, a probation officer prepared an amended presentence report to which neither party had any objections. The probation officer explained that Bass' violation of 18 U.S.C. §§ 922(g)(1) and (j) resulted in a base offense level of 20 since he committed the offenses subsequent to sustaining a felony conviction for a crime of violence (here, breaking and entering a residence). U.S.S.G. § 2K2.1(a)(4)(A). Two levels were added for possession of at least seven firearms, § 2K2.1(b)(1)(A), and two more levels were added since all firearms were stolen. § 2K2.1(b)(4)(A). Bass qualified for a two-level downward adjustment for acceptance of responsibility, § 3E1.1(a), and a one-level downward adjustment for entering a timely guilty plea, § 3E1.1(b), resulting in a total offense level of 21. The probation officer calculated 25 criminal history points, reflecting a fourteen-year history rife with charged and uncharged criminal conduct, assaultive behavior, substance abuse, thievery and conduct

---

[1]The firearms were both 12-gauge pump-action shotguns.

demonstrating utter disrespect for the law.[2]  Two criminal history points were added because the instant offenses were committed less than two years following Bass' release from custody for domestic violence.  The total of 27 criminal history points were more than twice the number necessary to put Bass in criminal history category VI.  The probation officer determined that the applicable guidelines sentencing range for total offense level 21, criminal history category VI, was 77 to 96 months.  Although noting that the 27 criminal history points Bass had attained by age 29 could support an upward departure, the probation officer nonetheless recommended a sentence at the high end of the applicable advisory range (i.e., 96 months) on each count, to run concurrently.

After reviewing the presentence report, Bass' counsel filed a sentencing memorandum seeking an unspecified sentence below the 77-month minimum of the applicable advisory guideline range.  Attributing all of Bass' criminal behavior to his substance abuse problem, counsel argued that a below-guidelines sentence was warranted because Bass had a marketable skill as a mason and was capable of earning a decent living; he was a good parent with a close bond to his (then 7-year old) daughter; he could apply himself to accomplishing tasks, having earned two GEDs; he was having some success controlling his addictions; and he made a good-faith effort to offer substantial assistance to the government.  In soliciting a below-guidelines sentence, counsel repeatedly asserted that Bass never spent a day in "prison" for any of his state crimes – explaining that even a short prison sentence would have a more stark impact on him than it would on "veteran prisoners."  The record shows, however, that Bass spent many months in "jail" for his numerous state-court

---

[2]Conduct demonstrating disrespect for the law includes a multitude of probation violations, contempt citations, sanctions for failure to appear, violations for driving on a revoked or suspended license (at times while under the influence or fleeing police officers), and disregard of a restraining order.

convictions.

At the sentencing hearing, the district court found that the probation officer correctly calculated the applicable advisory guideline range and ascertained from counsel that there were no objections to the calculations and range. The court also confirmed that neither party had requested a departure. The court explained the sentencing standards to Bass in the following manner.

> Mr. Bass, I'm sure [defense counsel] has indicated to you that the guidelines are advisory. But that I must consult them and give them due consideration in reaching a sentencing decision in this case.
>
> And in furtherance of that, I'm also required to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of Section 3553(a). And there are a number of factors to be considered in that regard, including the nature and circumstances of the offense, and the history and characteristics of you yourself.
>
> The offense here, the offense conduct are reflective of Mr. Bass's admittedly strong addiction to illegal substances and his need for money to supply his addiction.
>
> And to that extent, when we look at the circumstances of the offense, the pawning of weapons to obtain money, knowing that the firearms were stolen, I think puts this in a classification of a relatively serious offense.
>
> And in looking at Mr. Bass's extensive criminal history beginning at the age of 14, and continuing almost in an unbroken string until now when he is I believe 30 or very close to 30, I think we have to put Mr. Bass in a fairly serious category as well in terms of fashioning a sentence that is reflective of the seriousness of the offense and the particular characteristics of the offender.
>
> The factors considered under 3553(a) have to reflect a proportionate sentence, again looking at the seriousness of the circumstances of the offense, the history of the defendant.
>
> It should reflect an attempt at least to promote respect for the law, which given the nature of Mr. Bass's lengthy record, which includes significant amounts of theft offenses and violent offenses and offenses involving weapons, it seems it might take a little while to instill the kind of respect for the law that we would hope to see in citizens.
>
> We need to consider the necessity for punishment. And, again, in what is a seemingly consistent pattern of defendants who come to federal court after having had extensive exposure to the criminal justice system in the state courts and not having had very significant consequences flow from that, then they get to federal court and all of a sudden they are looking at very significant consequences.
>
> And those consequences include, among the factors of 3553(a), the necessity for punishment, deterrence, both of the individual and others, the necessity to protect

the public from further crimes, and in some cases, to provide the defendant with needed medical, educational and correctional treatment.

And all of those things in a case, I think, involving someone with the seriousness of Mr. Bass's criminal, lengthy criminal history, all of those are significant factors to be taken into account.

J.A. 53-54.

The court then heard argument from both parties. Bass' counsel reiterated the arguments set forth in the sentencing memorandum and asked for a two-level reduction in Bass' total offense level for substantial assistance, stating this would place Bass in an advisory guideline range of 63 to 78 months – and sought a sentence below[3] or in the low end of that range. The Government attorney strongly disagreed. He acknowledged that Bass attempted to make a proffer, but that it was a disappointment. He noted that he did not seek an upward departure, which he would typically do when faced with a 30-year old defendant with 27 criminal history points, because he thought Bass had potential and sincerely wanted to change. But it was his opinion that the 77 to 96 month range calculated by the probation department was "absolutely appropriate" given the seriousness of the offenses, noting, "This isn't just a typical felon in possession case. The nature of how he came about having the guns, and breaking into people's homes, and things, makes this a more serious offense. Fortunately no one was home and no one got hurt." J.A. 61.

After argument concluded, the district court continued with its explanation:

. . . Well, it does strike me that Mr. Bass is sincere, and apparently he has impressed the government with his sincerity and his desire to change.

But, again, given the seriousness of the offense, and in addition to that, in looking back through his criminal history, what really troubles me, in addition to the fact that weapons have been involved several times, in addition to this instance, is the

---

[3]Although counsel had answered affirmatively when the court earlier sought to confirm "[t]here has been no request for any departure under the guidelines," counsel nevertheless argued for a departure at sentencing.

violence that he seems to be prone to. Again, presumably as a result of the addiction.

Several domestic violence situations, as I recall, assault and battery, . . .. These are things that, while they didn't result in any significant jail or prison time in the state system, are suggestive of patterns that really need to be addressed.

[Defense counsel] suggests a two-level departure, and frankly, I just - - I can't see that either as a departure or as a variance based on what is in the file.

So we're dealing with a guideline advisory guidelines range of 77 to 96 months. That's a long time. And I think that the recommendation at the top end of the guidelines makes some sense for all of the reasons that I have touched upon here.

And I'll tell you honestly, Mr. Bass, it really does seem you sort of have a Jekyll and Hyde element to your background, and apparently [the Assistant U.S. Attorney] has seen it too. I mean you can be a productive person, you have a skill, one that is I think relatively in demand and relatively decent paying.

You have a youngster that you apparently feel genuine care for.

But then you have this other side that seems to, I don't know, disregard all of that.

And so the net result is that there has to be some significant reckoning of those two sides of you. And hopefully a lengthy period of incarceration will help to bring out the stronger, good parts, and suppress those bad parts.

J.A. 63-64.

The district court then sentenced Bass to 96 months in prison on each count, to be served concurrently. The court recommended intensive substance abuse treatment, anger management and/or mental health counseling and vocational counseling. In response to the court's question whether the parties had "any legal objections to the sentence as imposed," defense counsel responded, "No, your Honor." J.A. 66.

## II.

Post *Booker*, a district court crafting a sentence must consider the applicable advisory United States Sentencing Guidelines range, as well as the other factors listed in 18 U.S.C. § 3553(a),[4] in

---

[4]In addition to consideration of the advisory Guidelines range, the § 3553(a) factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; pertinent policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities and the need to provide restitution to the victims.

reaching a sentence that is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)(2).[5] *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007). The district court must begin by correctly calculating the applicable advisory guidelines range. *Gall v. United States*, – U.S. –, 128 S.Ct. 586, 598, 169 L.Ed.2d 445 (2007) (citing *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.") After giving the parties an opportunity to argue and recommend an appropriate sentence, the district court must consider the remaining § 3553(a) factors to determine whether they support the recommended sentences. *Gall*, 128 S.Ct. at 596. The court may not presume the guidelines range is reasonable; rather, it must make a fact-based individualized assessment. *Id*. at 597; *Nelson v. United States,* – U.S. –, 129 S.Ct. 890 (2009). After determining an appropriate sentence, the court must adequately explain the chosen sentence to allow for meaningful appellate review. *Id*. (citing *Rita*, 127 S.Ct. at 2468)). In short, the district court must "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (citing *Gall*, 128 S.Ct. at 597).

Generally speaking, the appeals court reviews the district court's sentence for reasonableness, using an abuse-of-discretion standard. *United States v. Alexander*, 543 F.3d 819, 821 (6th Cir. 2008). The sentence must be both procedurally and substantively reasonable. *Id*. at 821-22. In evaluating procedural reasonableness, we must determine whether the district court properly calculated the guidelines range, treated the guidelines as advisory, considered the § 3553(a) factors,

---

[5]Those purposes are deterrence; protection of the public; the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; and rehabilitation.

and adequately explained the sentence. *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008). In assessing substantive reasonableness, we consider whether the district court imposed a sentence sufficient, but not greater than necessary, to comply with the purposes of the statutory sentencing scheme. *Alexander*, 543 F.3d at 822 (citing 18 U.S.C. § 3553(a)). In this circuit, we accord a sentence within a correctly calculated guidelines range a presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

Where, however, the defendant has been given the opportunity to object to the district court's explanation for the sentence but does not do so, we review only for plain error. *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). Under the plain-error standard, the defendant can prevail only if there was an error below that was clear or obvious, which error affected substantial rights and seriously affected the fairness, integrity or public reputation of the judicial proceeding. *Id*. at 873.

### III.

Bass cannot show that the district court committed a procedural error when determining his sentence. The record shows that the district court strictly followed the procedure outlined by the United States Supreme Court in *Gall* in reaching Bass' sentence. The court properly calculated the applicable guidelines range (to which there was no objection), treated the guidelines as advisory, considered the § 3553(a) factors, and thoroughly explained the chosen sentence. *United States v. Sexton*, 512 F.3d 326, 331 (6th Cir. 2008) (citing *Gall*, 128 S.Ct. at 597).

Nor can Bass show a substantive error. Bass' argument that the district court overweighed his negative traits and underweighed his positive traits in fashioning the 96-month prison sentences fails under either abuse of discretion or plain error analysis. The record shows that in rejecting Bass'

8

request for leniency and sentencing him to the top of the applicable advisory guidelines range, the district court fairly considered Bass' negative and positive character traits. The court explained that Bass' penchant for violence and substance abuse caused him to entirely disregard his positive traits, observed that the many jail sentences Bass served for his state crimes had no apparent deterrent effect on his criminal behavior and determined that Bass had some significant reckoning to do. The court concluded that a lengthy sentence with intensive substance abuse treatment and anger management and/or mental health counseling would, hopefully, help Bass to overcome his criminal tendencies. Because the district court strictly complied with the proper sentencing procedure and did not unfairly consider Bass' negative and positive character traits, we affirm.