**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0779n.06

No. 08-6527

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 21, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| MAVIS CHRISTIAN, JR., | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before:  MOORE, SUTTON, and McKEAGUE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Mavis Christian

("Christian") appeals the district court's sentence following his conviction by guilty plea of being

a felon in possession of ammunition in violation of 18 U.S.C. § 922(g).  At sentencing, the district

court applied a cross-reference in the firearms sentencing guidelines to assault with intent to commit

murder, which increased the base offense level for Christian's felon-in-possession charge.  Christian

challenges his sentence on the grounds that, when finding that his conduct constituted assault with

intent to commit murder, the district court:  1) drew an adverse inference from Christian's silence

regarding a threat made against him by the victim prior to the shooting, 2) failed to make a specific

finding that Christian had attempted first-degree as distinguished from second-degree murder, and

3) failed to make a specific finding as to the applicable Guideline range.  The record does not support

the conclusion that the district court violated Christian's due process rights by drawing an adverse

inference from Christian's silence. Because the district court made a specific finding of attempted first-degree murder and the applicable Guidelines range, the district court did not abuse its discretion when it applied the cross-reference to attempted first-degree murder. Therefore, we **AFFIRM** the sentence imposed by the district court.

## I.  FACTS AND PROCEDURE

On October 3, 2007, Christian shot his co-worker, Ruben Washington ("Washington"), several times in the parking lot of Mimeo.com, their place of employment. At the time of the shooting, the two men were involved in an ongoing dispute: Washington claimed that Christian had spread rumors about his sexual orientation, and Christian claimed that Washington had threatened him several times at work. On the day of the shooting, Christian reported the conflict to their supervisor, who met with each of them and advised them to stay away from each other.

At about 3:30 p.m. that afternoon, Christian and Washington both went on break in an area adjacent to the company parking lot. In the break area, Washington sat down at the same picnic table where Christian was sitting. According to Washington, Washington sat quietly at the picnic table, noticed Christian looking at him, and, without exchanging any words, Washington left the break area and went to his car. According to Christian, Washington approached Christian and stated, "bitch, I'm going to kill you," before leaving the break area. R. 46 at 70 (Sentencing Tr.). Some of the other witnesses also testified that Washington approached Christian and said something to him before Washington walked to his car. Christian testified that, in light of Washington's past threats

to him, he believed that Washington was going to his car to retrieve a weapon, and he did not want to wait for Washington to get his gun and shoot Christian first.

After the encounter in the break area, Washington walked to the parking lot where he sat in his car and turned on the radio. Moments later, Christian also left the break area, walked to the parking lot, went to his own car, and retrieved a loaded handgun from the floorboard. Christian then walked across the parking lot to Washington's car, ignoring a witness's exhortations to stop. Upon reaching Washington's car, Christian shot inside the vehicle several times, striking Washington. Washington then exited the vehicle and struggled with Christian over the gun. Over the course of the attack, Washington was shot several times in the left arm, side, back, chest, thigh, and torso.

When Christian dropped the gun in the struggle, Washington fled the parking lot and entered the company building. Christian also tried to enter the building while still wielding the gun, but his coworkers would not allow him inside, and he subsequently returned to his car. While attempting to drive out of the parking lot, Christian struck a supervisor who attempted to prevent him from leaving. After the supervisor jumped off the hood, Christian fled the parking lot in his vehicle, discarded the firearm, went home, and changed his clothes. Later that day, Christian turned himself in to the police but refused to give a statement to investigators.

On January 31, 2008, Christian was charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). On June 25, 2008, Christian appeared before the District Court for the Western District of Tennessee, entered a guilty plea pursuant to a plea agreement, and was

found guilty. In exchange for the guilty plea, the government agreed not to oppose a reduction in Christian's offense level for acceptance of responsibility.

A pre-sentence investigation report ("PSR") was compiled after the plea hearing, to which the government filed no objections. Pursuant to U.S.S.G. § 2X1.1(c), the PSR applied a cross-reference in the firearms guideline, U.S.S.G. § 2K2.1(c), to the guideline for "Assault with Intent to Commit Murder; Attempted Murder," U.S.S.G. § 2A2.1, which provides for a base offense level of thirty-three when the object of the offense would have constituted first-degree murder.[1] The PSR also recommended increasing the base offense level by an additional two levels because the victim sustained serious bodily injury, and reducing the base offense level by three levels for acceptance of responsibility, for a total offense level of thirty-two. Christian objected to the application of the cross-reference for attempted first-degree murder.

On December 11, 2008, the district court held a sentencing hearing and considered evidence regarding whether Christian possessed the ammunition in connection with attempted first-degree murder. The district judge found that Christian's conduct constituted attempted murder with premeditation and malice aforethought, and overruled Christian's objection to application of the cross-reference. The district judge adopted the recommendations in the PSR, and, after applying the cross-reference to attempted first-degree murder, reached a Guidelines range for sentencing of 121 to 151 months of imprisonment. However, the statutory maximum penalty for the

---

[1]Hereinafter, we will refer to the cross-reference applied to Christian's sentence by the district court as the cross-reference for attempted first-degree murder.

4

felon-in-possession offense was 120 months. Accordingly, the district judge sentenced Christian to the statutory maximum sentence of 120 months, which fell below the Guidelines range, and to two years of supervised release, and levied a special assessment of one hundred dollars. Christian filed a timely appeal.

## II. ANALYSIS

### A. Constitutional Error

"This court reviews a constitutional challenge to a defendant's sentence *de novo* wherever the defendant preserves the claim for appellate review." *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003). Christian claims that, at the sentencing hearing, the district court drew an adverse inference from Christian's silence at the time of and after his arrest, in violation of *Mitchell v. United States*, 526 U.S. 314 (1999), and that, therefore, the district court applied the cross-reference in violation of Christian's Fifth Amendment right to silence. The government argues that the district court did not violate Christian's right to silence because the district court commented on Christian's pre-arrest, not post-arrest, silence.

Christian is correct that, under *Mitchell*, protections for a defendant's exercise of his right to remain silent apply at sentencing. *Mitchell*, 526 U.S. at 322–30. But post-arrest silence is distinguishable from testimonial silence at trial or sentencing, and is governed by the due process analysis of *Doyle v. Ohio*, 426 U.S. 610 (1976), and its progeny. Therefore, even if the district court did rely on Christian's post-arrest silence, such an inference would implicate Christian's due process rights under *Doyle*, and not directly his Fifth Amendment right against compelled self-incrimination.

However, the record is silent with respect to whether or not Christian received *Miranda* warnings, and, absent *Miranda* warnings, comments on a defendant's post-arrest silence do not violate due process. *See Fletcher v. Weir*, 455 U.S. 603, 607 (1982). Because there is no evidence in the record indicating that Christian received *Miranda* warnings, there can be no error, even if we assume that *Doyle* applies in this setting.

**B. Procedural Reasonableness**

**1. Guidelines Range**

Christian alleges that the district court committed procedural error at sentencing by not making a specific finding as to the appropriate Guidelines range. We review the sentence imposed by a district court for abuse of discretion. *United States v. Alexander*, 543 F.3d 819, 821-22 (6th Cir. 2008). When reviewing a sentence for procedural reasonableness, we have observed that "a district court necessarily abuses its sentencing discretion if it 'commit[s] [a] significant procedural error.'" *Id.* at 822 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). A district court's sentence is procedurally unreasonable if it "fail[s] to calculate clearly the appropriate Guidelines range" or to "adequately explain the chosen sentence." *United States v. Barahona-Montenegro*, 565 F.3d 980, 984 (6th Cir. 2009).

Christian's argument fails because, when the district judge considered the Guidelines, he specifically stated that "[Christian's] guideline range was 121 to 151 months." R. 46 at 108. When overruling Christian's objection to the application of the cross-reference for attempted first-degree murder, the district judge carefully considered the elements of attempted first-degree murder and

discussed his findings in detail.  Then, the district judge considered the 18 U.S.C. § 3553(a) factors

and explained the applicable Guidelines.  Finally, the district judge imposed the statutory maximum

sentence of ten years, which was below the applicable Guidelines range, and explained that it was

the statutory maximum sentence.  It is apparent from the record that the district court calculated

clearly the Guidelines range and explained adequately the chosen sentence.

### 2.  Attempted First-Degree Murder

Christian also argues that the district court did not find specifically that Christian had

attempted first-degree murder, and that only proof of premeditation could elevate Christian's conduct

from attempted second-degree to attempted first-degree murder.  Title 18 U.S.C. § 1111 defines

murder as "the unlawful killing of a human being with malice aforethought.  Every murder

perpetrated by . . . any other kind of willful, deliberate, malicious, and premeditated killing . . . is

murder in the first degree.  Any other murder is murder in the second degree." *See* U.S.S.G. § 2A2.1

cmt. n.1 (defining first-degree murder by reference to 18 U.S.C. § 1111).  Contrary to Christian's

claims, immediately after quoting the elements of first-degree murder from the statute, the district

judge found both malice aforethought and premeditation:

> [T]he defendant got up, walked over to his car, had that distance to think about it, certainly got out a firearm, cocked it, came back, walked across the parking lot and then discharged the weapon into another human being.  Some things can happen so quick that they wouldn't constitute first degree murder had the victim died.  *But in this case, there was certainly malice aforethought.  It was—it was willful, deliberate conduct.  It was premeditated in the sense that he brought the weapon in his car, he had the weapon in his car, he went to the car and got it.*  He had people saying to him don't do it, it's not good, and he kept going anyway.  And then he started shooting.  I don't find that there's any credible evidence that . . . Mr. Washington engaged in any physically provocative activity.

R. 46 at 92-93 (emphasis added). The district judge then continued to discuss the evidence supporting his findings both of malice aforethought and premeditation. In response to the objection of Christian's counsel that Christian's actions did not constitute premeditated conduct, the district court asked the government to make an argument with respect to premeditation, and the district court concluded that the evidence supported the government's position. The district court then overruled Christian's objection and applied the cross-reference.

Moreover, the district court did not clearly err in finding the requisite intent. We will "accept the findings of fact of the district court unless they are clearly erroneous and [will] give due deference to the district court's application of the guidelines to the facts." *United States v. Williams*, 355 F.3d 893, 897-98 (6th Cir. 2003) (quoting 18 U.S.C. § 3742(e)). The evidence shows that Christian walked to his car, retrieved a loaded weapon, walked across the parking lot, and shot an unarmed man sitting inside his car numerous times, without evidence of physical provocation. Ample evidence supports the district court's finding that Christian acted with intent to commit first-degree murder. *See United States v. McDaniel*, No. 97-5233, 1998 WL 661106, at *4–5 (6th Cir. Sept. 2, 1998) (unpublished opinion).

### III. CONCLUSION

Because the record is silent regarding whether Christian received *Miranda* warnings, the record does not support the conclusion that the district court violated Christian's due process rights by drawing an adverse inference from Christian's post-arrest silence. We also conclude that the district court found the requisite elements of attempted first-degree murder and articulated the

applicable Guidelines range.  Thus, the district court did not abuse its discretion when it applied the cross-reference to attempted first-degree murder.  Therefore, we **AFFIRM** the sentence imposed by the district court.