NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0280n.06

Nos. 09-2344, 09-2486, 10-1188

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 29, 2011
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| -Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| KIMANI HARDGE AND CLYDE REAVES, | ) | |
| | ) | |
| -Defendants-Appellants. | ) | |
| | ) | |

BEFORE: NORRIS, ROGERS, and GRIFFIN, Circuit Judges.

ROGERS, Circuit Judge. Kimani Hardge and Clyde Reaves were co-defendants in a case involving a conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841. Reaves stood trial and was found guilty; Hardge entered into a Rule 11 plea agreement with the Government. Hardge was separately charged with possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), to which he also pled guilty. Both defendants appeal their sentences, arguing procedural error and substantive unreasonableness. Because these arguments are without merit, affirmance is required in most respects. However, a limited remand is appropriate to correct the entry of judgment against Hardge, as the written judgment is in conflict with the district court's oral sentence.

Hardge and Reaves became the subject of an investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in the fall of 2008. As part of the investigation, the ATF

arranged drug buys by undercover agents and confidential informants. Reaves sold 4.426 grams of

cocaine base to an undercover agent in a buy arranged by Hardge. Hardge directly sold crack to

undercover agents or informants on three other occasions. The amount of crack involved in those

transactions totaled 11.828 grams. On September 5, 2008, Hardge's residence was searched

pursuant to a warrant. Agents found an additional 11.014 grams of crack and 118.83 grams of

marijuana during the search. Therefore, the total amount of crack for which Hardge was held

responsible was 27.268 grams.[1]

**Kimani Hardge's Appeal**

Hardge entered into plea agreements in both the conspiracy and possession cases on February

5, 2009. The plea agreements' guidelines-range worksheets identified Hardge as a career offender

and stated that his offense level was 37 and his applicable guidelines range was 360 months'-to-life

imprisonment.[2] The plea agreements also included a calculation of the base offense guidelines range

---

[1] Pursuant to the plea agreements, the Government dismissed the counts of Hardge's indictment involving Hardge's direct sales of crack to informants or agents. However, the plea agreements stated that while the charges would be dismissed, the underlying transactions would be counted as relevant conduct. Therefore, the quantities involved in those buys were considered in calculating Hardge's base offense level.

[2] The worksheets appear to have arrived at the wrong career-offender offense level for the crimes to which Hardge pled guilty. The career-offender offense level for drug convictions is determined by the statutory maximum for the instant offense. An offense level of 37 applies where the statutory maximum is life imprisonment. U.S.S.G. 4B1.1(b)(A). However, the statutory maximum for a violation of 21 U.S.C. § 841(a) involving between 100 and 1000 kilograms of marijuana is 40 years' imprisonment. 21 U.S.C. § 841(b)(1)(B). Therefore, the appropriate offense level for Hardge's crimes is 34, rather than 37. U.S.S.G. § 4B1.1(b)(B). In addition to erroneously determining the career-offender offense level, the plea agreements do not factor in a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

that would apply were Hardge not a career offender. This calculation used an equivalency of 1g-to-5kg to convert crack to marijuana, resulting in a total quantity of marijuana of 136.439 kg, for a base offense level of 26. U.S.S.G. § 2D1.1(c)(7).

Hardge's presentence report ("PSR") includes calculations of both his base offense guidelines range and the guidelines range to which he is subject as a career offender. The PSR determined the base offense level using the crack-to-marijuana ratio from the drug equivalency table, 1g-to-20kg, to convert Hardge's crack quantity to marijuana. U.S.S.G. 2D1.1(E) cmt. n. 10(E). Under this ratio, Hardge was responsible for 545.47 kilograms of marijuana, for a base offense level of twenty-eight.[3] However, the PSR went on to apply the two-level ameliorating reduction described in U.S.S.G. § 2D1.1(E) cmt. n. 10(D)(i), which states that crack cocaine quantities should be converted to marijuana equivalencies pursuant to the table, but that the resulting offense level should be reduced by two. In light of the reduction, Hardge's base offense level was 26. The PSR separately calculated Hardge's career-offender guidelines range as 188-to-235 months and recommended that guidelines range as applicable.

Hardge first argues that the PSR improperly calculated his base offense level by using a ratio of 1g-to-20kg in converting crack to marijuana for sentencing purposes. Although 1g-to-20kg is the ratio specified in the Drug Equivalency Table, U.S.S.G. 2D1.1(E) cmt. n. 10(E), the plea agreements

---

[3]At sentencing, Hardge did not object to the equivalency ratio used in calculating his base offense level. Although Hardge did not make this objection, the Government has conceded that the district court did not make a sufficient *Bostic* inquiry and that the appropriate standard of review is therefore abuse of discretion and not plain error.

used a ratio of 1g-to-5kg.  Hardge argues that if the PSR had used the 1-to-5 ratio, his ultimate base

offense level would have been twenty-one rather that twenty-three.  Hardge argues that the lower

base offense level would have revealed a larger disparity between the base offense range and his

career-offender range, and that this larger gap might have convinced the court to sentence Hardge

below his applicable guidelines range.

Hardge offers no case law to support his argument that an erroneous base offense level

calculation calls a within-guidelines career-offender sentence into question.  This court need not

consider the argument's merits, however, because Hardge's claim is based on flawed calculations.

Hardge's plea agreements state that his base offense level is 26, but they do not explicitly apply the

two-level ameliorating reduction for crack conversions.  It seems that the worksheets' author instead

folded the conversion and reduction steps into one step by recognizing that a ratio of 1g-to-5kg

would accomplish the same ultimate result for Hardge as first using a ratio of 1g-to-20kg and then

reducing by two levels.  Although the plea agreements and PSR use different methods to calculate

the appropriate base offense level, the two documents reach the same result—a base offense level

of 26.  Hardge argues that the PSR should have used the plea agreements' 1g-to-5kg ratio and then

applied the two-level ameliorating reduction, yet he does not acknowledge that this reduction appears

nowhere in the plea agreements.  Therefore, Hardge's argument that the PSR base offense level

calculation is inconsistent with the plea agreements is without merit.

Hardge next argues that the district court improperly rejected his argument that he should

receive a below-guidelines sentence because of the sentencing disparity between powder and crack

cocaine. Hardge bases this claim on what he views as a factually inaccurate colloquy between the judge and the probation representative. That brief exchange, which was prompted by Hardge's objection to being scored under crack guidelines that were far harsher than the powder cocaine guidelines, is excerpted below:

> THE COURT: [I]s crack cocaine being treated under the same guidelines?
>
> PROBATION OFFICER: No, Your Honor, I believe it's five to one, the ratio is. But no, they're not being treated the same.
>
> THE COURT: It was, at one point, a hundred to one?
>
> PROBATION OFFICER: Correct.
>
> THE COURT: And now it's five to one, is that what you're saying?
>
> PROBATION OFFICER: Yeah, I'm not sure exactly the ratio but it was reduced. I'm not sure if it's five to one.
>
> THE COURT: And the guideline that you applied here is the reduced guideline?
>
> PROBATION OFFICER: Correct, Your Honor.

Ultimately, the court concluded that no "further consideration should be given to the fact that this is crack cocaine, rather than powder cocaine. Because as the probation department has indicated, the disparity between the two has been lowered significantly. And the probation department has correctly calculated the guidelines based on the current guidelines applicable to cocaine base or crack cocaine." Hardge argues that the district court's reliance on the probation officer's statement represents procedural error for two reasons. First, Hardge argues that the exchange does not make clear which ratio is being discussed, the ratio of powder cocaine to crack

cocaine or the ratio of marijuana to crack cocaine. This argument is easily rejected because Hardge only objected to the disparity between powder and crack at sentencing, so there is no reason to believe the judge would be inquiring about the marijuana-to-crack cocaine ratio. Further, for purposes of Hardge's base offense level calculation, which is based on the drug equivalency tables, a reduction in the marijuana-to-crack cocaine ratio can be construed as a reduction in the powder-to-crack cocaine ratio (because the disparity between the marijuana equivalencies for crack and powder is reduced). Therefore, even if the exchange were unclear as to which ratio was being discussed, the district court's ultimate conclusion would still be correct.

Hardge correctly argues that the probation officer initially misstated the ratio between powder and crack cocaine as 5-to-1. However, the officer subsequently stated that she was not sure what the new ratio was, but only that the ratio had been reduced and that the reduction had been applied in calculating Hardge's base offense level (presumably in the form of the two-level reduction). Hardge argues that the ratio of powder to crack cocaine had not been reduced, yet he recognizes the existence of the two-level reduction for offenses involving crack cocaine. That is, Hardge fails to acknowledge that the two-level reduction effectively reduced the ratio between powder and crack cocaine.

It is true that the actual ratio between powder and crack cocaine that results from the two-level reduction is not 5-to-1, but this fact would not help Hardge even if the district court had relied on a 5-to-1 figure. Hardge was not sentenced based on the guidelines range for the instant offense, but rather according to his career-offender range of 188-to-235 months. His lower base offense advisory range of 92-to-115 months, although correct, was not taken into account. The irrelevance

of the base offense level was made evident by the district court's statement that it did "not believe that the criminal history is overrepresented or overstated" and did "not believe that a lesser sentence should be imposed because of an overstated or incorrect evaluation of the criminal history." These statements reveal that the district court believed Hardge's status as a career offender warranted sentencing him according to the career-offender range without taking the base offense range into account.

Hardge acknowledges that he was sentenced as a career offender, but he again argues that were the PSR base offense level lower, the district court would have been more likely to grant him a downward variance. This argument is speculative, however, because it is based on what Hardge's base-level guidelines range would have been had the ratio between powder and crack actually been 5-to-1, a ratio Hardge admits has never been used. The transcript does not suggest that the district court believed the actual ratio was 5-to-1, only that the discrepancy between powder and crack cocaine penalties had been reduced. Therefore, because the district court correctly concluded that the disparity had been reduced and that reduction was reflected in Hardge's PSR, its explanation for rejecting Hardge's disparity argument does not constitute procedural error.

Hardge also argues that it was substantively unreasonable for the district court to sentence him as a career offender, which had the effect of doubling the length of his applicable guidelines range. However, as explained below. Hardge's policy-based arguments are foreclosed by this court's precedent, and the length of his sentence, standing alone, does not amount to substantive unreasonableness.

Hardge does not contest the accuracy of his criminal history report, which includes five prior

drug crimes and an attempted breaking and entering. Nor does Hardge deny that he committed the

instant offenses while on probation. Instead, he makes a policy argument that sentencing street-level

dealers as career offenders will have little, if any, effect on the level of drug dealing in the

community and that sentencing low-level drug defendants as career offenders overstates the

likelihood of recidivism. Hardge is not the first defendant to make such arguments to this court. In

*United States v. Alexander*, 543 F.3d 819, 826 (6th Cir. 2008), the defendant likewise argued that

the harsher career-offender sentence would have no effect on street-level dealing and that the nature

of his criminal history justified a below-guidelines sentence. This court stated:

> Alexander argues that his criminal history is of a "petty nature" that justifies a
> sentence much lower than 360 months of imprisonment, a sentence that would be
> "sufficient, but not greater than necessary, to comply with the purposes" of
> sentencing as set forth in 18 U.S.C. § 3553(a)(2). But Alexander is still a career
> offender—regardless of whether he characterizes his prior felony convictions as
> "petty." Indeed, despite being a career offender, and despite having already abused
> the district court's leniency when committing other drug-related offenses while out
> on bond, Alexander was sentenced at the low end of the recommended Guidelines
> range. This suggests that the court was mindful of *both* the "nature and
> circumstances of the offense and the history and characteristics of the defendant."

*Id.* (citations omitted). Hardge's identical arguments are likewise insufficient to overcome the

presumption of reasonableness afforded to the district court's within-guidelines sentence. *See id.*

Hardge has provided no argument for why his sentence is substantively unreasonable other

than the fact that it is quite long in comparison to the base offense guidelines range. Hardge points

to the fact that his career-offender guidelines range was twice the base offense level range as

calculated by the PSR, but such a disparity is not an adequate basis for finding substantive

unreasonableness. In *United States v. Brumley*, 213 F. App'x 416, 418 (6th Cir. 2007) (unpublished), the defendant contended that his sentence of 144 months (a downward variance from his career-offender guidelines range of 151-188 months) was unreasonable because it was twelve times the length of the advisory range for the offense of conviction. This court rejected Brumley's argument, noting that the sentencing transcript revealed that the district court had not relied on the guidelines alone in determining Brumley's sentence. *Id.* at 419. Here too, the district court did not simply declare a within-guidelines sentence without explanation. The court first discussed Hardge's criminal history at some length with counsel and the probation representative. Following this discussion, the court concluded that the PSR did not overstate Hardge's criminal history. The court also noted the deterrence factor, and while it was not explained at any length, this comment could reflect the court's recognition that prior sentences had been ineffective at deterring Hardge, who committed the instant offenses while on probation. The court also recognized Hardge's need for drug treatment. The explanation of the chosen sentence was adequate, and Hardge's substantive unreasonableness argument fails.

It is necessary to remand Hardge's case for the limited purpose of correcting an error in the written judgment. At sentencing, the district court stated that Hardge would receive 180 months' imprisonment for the conspiracy conviction and 188 months' imprisonment for the possession conviction, the sentences to run concurrently. The written judgment corrects this apparent misstatement, stating that Hardge was to be imprisoned for 188 months for both convictions, the terms to run concurrently. However, when there is a discrepancy between the oral and written

sentence and the oral sentence is unambiguous, the oral sentence controls. *See United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008). Therefore, Hardge is subject to a sentence of 180 months for his conspiracy conviction, and it is appropriate to remand the case for correction of the written judgment.

**Clyde Reaves' Appeal**

Hardge's co-defendant, Clyde Reaves, was convicted following a jury trial. Reaves' PSR calculated his total offense level to be 22 and his criminal history category to be I, resulting in an advisory guidelines range of 41-to-51 months. At sentencing, Reaves argued that his guidelines range was unreasonably high because of the disparity between crack and powder cocaine sentences under the guidelines. The district court agreed that the disparity was unwarranted and sentenced Reaves to thirty-five months' imprisonment.

Reaves now argues that the district court committed procedural error by failing to adequately explain its reasons for selecting a thirty-five-month sentence as opposed to a still lower term. This argument fails, however, because the district court explained its reasons for selecting the thirty-five month sentence at some length. Among other factors, the court considered that Reaves was "less than honest on some of the things he testified to," that Reaves had a prior drug conviction, and that Reaves needed drug treatment. Further, the court granted a downward variance from the advisory guidelines in light of the disparity between crack and powder cocaine under the guidelines. A below-guidelines sentence in favor of the defendant is entitled to at least as strong a presumption of reasonableness on appeal by the defendant as a within-guidelines sentence. *See United States v.*

*Curry*, 536 F.3d 571, 573 (6th Cir. 2008). Reaves has failed to rebut that presumption. While a district court should "address the defendant's arguments regarding factors that warrant a shorter sentence[,]" the court need not "respond to every request for a specific term of incarceration." *Brumley*, 213 F. App'x at 419. Here, the district court clearly responded to Reaves' argument regarding the crack-powder cocaine disparity, as the court identified that exact reason for varying downward from the advisory range. That the court did not explicitly state why Reaves was not receiving a sentence within the advisory range that would apply to an equal quantity of powder cocaine does not amount to procedural unreasonableness. *See id.* Reaves has offered nothing else to rebut the presumption of reasonableness afforded the district court's sentence. Although Reaves' brief states that his sentence was substantively unreasonable, that argument is not developed and is therefore deemed waived. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010).

**Conclusion**

For the foregoing reasons, Hardge's and Reaves' sentences are affirmed in all respects except for the written sentence of 188 months' imprisonment for Hardge's conspiracy conviction. Hardge's case is remanded for the limited purpose of correcting the written entry of judgment for that conviction to conform with the oral sentence of 180 months.