### UNITED STATES of America,
**Plaintiff-Appellee,**

v.

### Scott Gordon DUNCAN,
**Defendant-Appellant.**

### No. 84–1526.

United States Court of Appeals,
Sixth Circuit.

Argued March 14, 1985.

Decided June 7, 1985.

---

James Bearinger, argued, Traverse City, Mich., for defendant-appellant.

Don Davis, argued, John A. Smietanka, U.S. Atty., Thomas J. Gezon, Grand Rapids, Mich., for plaintiff-appellee.

Before WELLFORD and MILBURN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant pled guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), subject to his being allowed this appeal of the district court's decision denying his motion to dismiss based on pre-indictment delay and motions to suppress evidence. *See* Federal Rule of Criminal Procedure 11(a)(2). The district court opinion is published at 586 F.Supp. 1305 (W.D.Mich.1984).

## I.

On July 21, 1981, Michigan state police stopped defendant's car and placed defendant under arrest pursuant to a previously issued arrest warrant. During an inventory search at the arrest scene, just prior to having a private wrecker tow defendant's car off the public highway, the officers opened the trunk of defendant's car and noticed an odor of what they believed to be marijuana and observed a plastic garbage bag, which the officers believed to be the source of the odor. After obtaining a search warrant the following morning, the deputies inspected the trunk area thoroughly and discovered the garbage bag contained 4,475 grams of marijuana. The deputies also discovered 53.5 grams of cocaine in the spare tire area.

Defendant was arraigned in state court in July, 1981. Aside from various defense motions, the case was essentially inactive

until July 18, 1983, when the charges were dismissed pursuant to a request by the prosecution. Defendant was thereafter indicted by a federal grand jury on January 12, 1984. His conditional guilty plea was accepted on May 25, 1984.

## II.

Defendant argues that the delay between the crime and his indictment by a federal grand jury violated his due process rights. A discussion of the law applicable to a due process claim based on pre-indictment delay must begin with *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 S.Ct. 752 (1977). In *Lovasco* the Supreme Court granted certiorari "to consider the circumstances in which the Constitution requires that an indictment be dismissed because of delay between the commission of an offense and the initiation of prosecution." *Id.* at 784, 97 S.Ct. at 2046. Initially, the Court noted that the speedy trial clause of the Sixth Amendment does not apply to pre-indictment delay. The Court further noted that although statutes of limitations provide the primary guarantee against the bringing of overly stale criminal charges, such do not fully define a defendant's rights with respect to the events occurring prior to indictment, and the due process clause has a limited role to play in protecting against oppressive delay.

Next, the Supreme Court in *Lovasco* addressed the defendant's argument that due process bars prosecution whenever a defendant suffers prejudice as a result of pre-indictment delay. The Court rejected the argument, and stated that proof of actual prejudice makes a due process claim concrete and ripe for adjudication, but that it does not make the claim automatically valid. The Court stated that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused. The Court stated the test to be whether the delay "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' ... and which define 'the community's sense of fair play and decency,'" 431 U.S. at 790, 97 S.Ct. at 2049 (citations omitted).

■ This court has interpreted *Lovasco* to provide that "[d]ismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Greene*, 737 F.2d 572, 574 (6th Cir.1984) (quoting *United States v. Brown*, 667 F.2d 566, 568 (6th Cir.1982) (per curiam)). *See also United States v. Booher*, 641 F.2d 218 (5th Cir.1981). *Both* parts of the test must be met before a defendant is entitled to have the indictment dismissed. *See Greene, supra.*

■ In the instant case the defendant argues that he suffered actual prejudice as a result of the pre-indictment delay because his former girl friend, who was once willing to testify on his behalf, is now unwilling to do so. We are of the opinion that such a claim is an insufficient showing of actual prejudice to justify the dismissal of the indictment. We are aided in reaching this conclusion by another Supreme Court case dealing with the issue of pre-indictment delay, *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In *Marion*, the Court stated as follows:

Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

*Id.* at 325–26, 92 S.Ct. at 466.

Moreover, we note that although defendant claimed that his former girl friend was willing to testify on his behalf, "there was no indication of how [the witness] would have aided the defense, ..., or what exculpatory testimony would have been offered." *United States v. Doe*, 642 F.2d

1206, 1208 (10th Cir.) (citations omitted), *cert. denied,* 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 86 (1981). In sum, defendant has failed to show that he suffered actual prejudice as a result of the delay such that the indictment should be dismissed. Therefore, it is not necessary to address the second part of the test. *See Greene, supra,* 737 F.2d at 575.

### III.

■ The second issue raised in this appeal is whether the district court erred in denying the defendant's motion to suppress evidence. The defendant argues that the drugs seized as a result of the search of the automobile trunk violated his Fourth Amendment rights because the search was beyond the scope necessary for an inventory search.

If probable cause did not exist at the time of the search of defendant's trunk, in order for the search to be constitutionally valid the search must come within the inventory exception to the Fourth Amendment warrant requirement as set forth in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman,* the Supreme Court held that warrantless inventory searches of impounded vehicles by authorities pursuant to a standard policy or procedure do not violate the Fourth Amendment.

The defendant argues in the instant case that even if there was a legitimate basis for an inventory search under the circumstances at the arrest scene, such an inventory search should not extend to closed containers or the trunk of a vehicle. The short answer to defendant's argument that it was unreasonable to open the garbage bag is that the district court found that the police officer did not open the garbage bag at the time of the inventory search. *See* 586 F.Supp. at 1308. The defendant has pointed to no evidence to refute this finding and did not pursue it at oral argument; therefore, the district court's determination must be accepted as not being clearly erroneous.

In support of his position that the search of the trunk itself was unreasonable, the defendant cites *United States v. Wilson,* 636 F.2d 1161, 1165 (8th Cir.1980). In *Wilson,* the Eighth Circuit held that "the needs of the Government in conducting an inventory search may be ordinarily accomplished without the serious intrusion into the locked trunk of an automobile." *Id.*

However, as the district court noted, other circuits have not adopted this position. *See United States v. Edwards,* 577 F.2d 883, 893 (5th Cir.) (*en banc*) (inventory search must be limited in scope to those places within the interior or trunk of an automobile where, under the particular circumstances of the case, property of the owner can reasonably be expected to be found), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *see also United States v. Long,* 705 F.2d 1259 (10th Cir. 1983); *United States v. Bosby,* 675 F.2d 1174 (11th Cir.1982); and *United States v. Martin,* 566 F.2d 1143, 1145 (10th Cir. 1977).

We agree with and adopt the following language by the district court below:

> To protect themselves against spurious claims of lost or stolen property, the authorities must know the contents of any vehicle which they impound. This is especially true in this case since the Benzie County authorities did not have their own impoundment facility and relied on private contractors to tow and store impounded vehicles.
>
> The inventory form which the sheriff's deputy was required to complete prior to releasing the vehicle for impoundment asked him to determine if the vehicle had a spare tire. To obtain that information, it was necessary to open the trunk of the car. The Court is persuaded that under the circumstances of this case, opening the locked trunk with the keys obtained from defendant was reasonable under the Fourth Amendment as an inventory search conducted pursuant to the standard policy and practice of the sheriff's department.

586 F.Supp. at 1312.

■ Next, the defendant argues that he was given no opportunity to make arrange-

ments to have his car picked up by a friend rather than have it impounded, a factor to be considered in evaluating an inventory search under *Opperman*. *See* 428 U.S. at 375, 96 S.Ct. at 3100. Under the circumstances present at the arrest scene, a public highway, we believe that the police officer's action in having the automobile immediately impounded was reasonable. As the arresting officer explained, he was one of only two or three officers in his jurisdiction and, therefore, they cannot wait at the scene of a vehicle arrest until someone arrives to pick up the vehicle.

Finally, the defendant argues that although the district court held that the inventory search was conducted according to a written policy of the sheriff's department, no such policy was produced in evidence, and the officer was somewhat unsure what the policy actually provided. After a review of the record, we are satisfied that the arresting officer conducted the inventory search pursuant to an established procedure of the Benzie County Sheriff's Department.

## IV.

For the reasons stated herein, the decision of the district court is AFFIRMED.