842 F.2d 333
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peter SANZO, Defendant-Appellant.
 No. 87-3459.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Peter Sanzo appeals his conviction and sentence for receiving a firearm as a previously convicted felon in violation of 18 U.S.C. 922(h)(1). Upon application of the government, Sanzo was sentenced to a term of fifteen years' imprisonment under the provisions of the Dangerous Special Offender statute, 18 U.S.C. 3575. Sanzo raises three questions on appeal: (1) whether the district court was correct in determining that he was competent to stand trial; (2) whether the district court was correct in failing to dismiss the indictment because of pre-indictment delay; and (3) whether the fifteen year sentence is disproportionately severe under 18 U.S.C. 3575.
 
 
 2
 The sufficiency of the evidence presented at trial is not disputed. The evidence shows that Harold Hatcher and Wayne Miller went to the Convenient Food Mart in Cleveland, Ohio, on the night of June 26, 1980. When they arrived, Hatcher pulled the car he was driving into an empty parking space. At the time, Sanzo, who was driving a Cadillac Fleetwood, was stopped nearby talking. Sanzo yelled an expletive at Hatcher, got out of the Cadillac, walked over to where Hatcher was parked, and hit Hatcher in the head, just as Hatcher emerged from his car.
 
 
 3
 Hatcher returned the blow and a fight ensued in the parking lot. Shortly afterwards, Sanzo returned to his vehicle, reached into his car and pulled out something in a black sock shaped like a revolver, and walked back over to Hatcher. In the meantime, Hatcher, the owner of a security agency, had reached into his car and armed himself with a pistol that he customarily carried.
 
 
 4
 Standing with his pistol concealed behind his back and leg, Hatcher was again confronted by Sanzo. Sanzo thrust his gun towards Hatcher's stomach and fired at point-blank range. Wounded, Hatcher stepped back and fired three shots at Sanzo. Miller then helped Hatcher into his car and drove him to a hospital. Sanzo was left lying wounded in the parking lot. A paramedic who was called to the scene shortly thereafter found a bloody sock containing a pistol between Sanzo's thighs. The pistol had five live rounds and one spent round when recovered.
 
 
 5
 Sanzo admits that the firearm found by his body had moved in interstate commerce and that he had previously been convicted on three felony charges.
 
 
 6
 On June 24, 1985, an indictment was filed charging Sanzo with receiving a firearm as a previously convicted felon, in violation of 18 U.S.C. 922(a)(1). Following a pretrial hearing, Sanzo was adjudged competent to stand trial. Sanzo was then convicted. He was sentenced to fifteen years imprisonment under 18 U.S.C. 3575. We turn now to the challenges raised on appeal by Sanzo.
 
 
 7
 Sanzo's first challenge is that the district court erred in concluding that he was mentally competent to stand trial. More particularly, Sanzo argues that the evaluation of a Dr. Kenny indicates that he suffers from a severe memory impairment that makes it impossible for him to consult with counsel or follow the trial.
 
 
 8
 As an initial matter, we note that a district court's competency determination will not be reversed unless we find it to be "clearly erroneous." United States v. Shepard, 538 F.2d 107, 110 (6th Cir.1976). We believe there was more than ample evidence in this case to support the determination of the district court that Sanzo was competent to stand trial.
 
 
 9
 Sanzo was evaluated at the United States Medical Center at Springfield, Missouri, for physical and neurological testing over a 54-day period. Sanzo was subjected to a psychiatric evaluation by Dr. Clayton Pettipiece and a psychological evaluation by Dr. Daniel Foster. Both doctors concluded in their written reports and in their hearing testimony that Sanzo was competent to stand trial. There was no evidence that Sanzo's brain was ever damaged from the bullet wounds he sustained to the face during the shooting. Dr. Pettipiece testified that Sanzo was consistently able to relate his version of the events that formed the basis for the present charges. There was also considerable evidence of his ability to care for himself and interact while at the Medical Center.
 
 
 10
 Dr. Foster conducted a number of exams showing Sanzo to have "a good knowledge and understanding of judicial personnel, process, and procedure, as well as the ability to trust and work with his attorney in the preparation of his own defense." Furthermore, Dr. Foster had the opportunity to observe extensively Sanzo during his stay at the Medical Center. He found that with respect to the shooting incident, Sanzo was able to recount the story in "a detailed ... [and] logical sequence" that evidenced a "highly complex brain function."
 
 
 11
 Sanzo argues that the district court should have focused on the examinations conducted by Dr. Kenny, a specialist in neuropsychology, who examined Sanzo following his release from the Medical Center. Kenny found that Sanzo suffered from memory impairments that might intrude upon his competency to stand trial and to cooperate with his attorneys. The district court found, however, that Kenny's conclusion could be more properly characterized as opining that Sanzo could not try this case himself, rather than that the defendant could not assist his attorneys. Kenny had concluded, moreover, that Sanzo was "capable of understanding the nature of the charges against him."
 
 
 12
 We see no reason to set aside the judgment of the district court that the experts from the Medical Center "demonstrated a more accurate understanding than [Dr.] Kenny of the purposes for which they were examining [Sanzo]." The court's ultimate conclusion that Sanzo was competent to stand trial is more than amply buttressed by the testimony of Doctors Pettipiece and Foster, as well as the results of the many exams and tests conducted.
 
 
 13
 We turn now to the second issue raised by Sanzo in this appeal. Sanzo argues that he was prejudiced by the pre-indictment delay because of the pretrial death of a witness whom he claims could have exonerated him.
 
 
 14
 We note that the Due Process Clause offers little protection to criminal defendants against pre-indictment delay. To be successful, a criminal defendant must show that "the government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." United States v. Gouveia, 467 U.S. 180, 192 (1984). As we observed in United States v. Duncan, 763 F.2d 220, 222 (6th Cir.1985) "both parts of the test must be met before a defendant is entitled to have the indictment dismissed." (emphasis in original). We do not believe Sanzo has made the necessary proof.
 
 
 15
 Sanzo has failed to demonstrate that the pre-indictment delay was a deliberate device by the government to gain advantage. There is no evidence anywhere in the record to suggest that the government had an improper motive for delaying the indictment. Improper motivation cannot be presumed. The only advantage that Sanzo alleges that the government secured by delaying the indictment was the loss of prospective witness Bennett. Bennett, however, was in good health when the indictment was returned and there was no reason for anyone to believe that his death was imminent. See United States v. McManaman, 606 F.2d 919 (10th Cir.1979). Finally, we note that the death of Charles Bennett occurred on March 2, 1986, 251 days after the indictment had been returned. Sanzo conceded that "Bennett was in apparently stable health when the indictment was brought" and that defense counsel had no "knowledge that [his] key witness would die." Because we do not believe there is any evidence to suggest that the government's delay in bringing the indictment was a deliberate device to gain an advantage over Sanzo, we do not need to address the question of whether the delay caused actual prejudice to Sanzo's defense.
 
 
 16
 The third and final assignment of error by Sanzo is that the district court erred when it imposed a fifteen-year sentence. Sanzo was convicted of possession of a firearm by a convicted felon, which, under the statute making it an offense, 18 U.S.C. 1202(a)(1), provides for a maximum term of two years. Sanzo was sentenced, however, as a Special Dangerous Offender under 18 U.S.C. 3575, to a term of fifteen years. That statute provides that the sentence as a SDO shall be proportionate to the underlying charge, and no more than twenty-five years. There cannot be any question that Sanzo is a dangerous repeat offender who poses a substantial threat to society. The incident for which Sanzo has been convicted here represents at least the third serious criminal incident in which he has used a firearm. One incident involved the pointing of a revolver at a policeman, and another the assaulting of a man in Cleveland, Ohio with a shotgun. Accordingly, we believe the decision of the district court to sentence Sanzo to fifteen years was fully justified.
 
 
 17
 For the foregoing reasons, Sanzo's conviction and sentence are hereby affirmed.