**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0866n.06

**No. 09-5742**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DANIEL RAYMOND VAUGHN, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MARTIN, MOORE, and COOK, Circuit Judges.

COOK, Circuit Judge. Defendant-appellant Daniel Vaughn appeals the district court's denial of his motion to dismiss a superseding indictment for pre-indictment delay and his 100-month, within-guidelines sentence. We affirm the denial, concluding that the pre-indictment delay did not violate the Due Process Clause of the Fifth Amendment, and affirm the sentence, finding it reasonable.

I.

Although this case involves multiple charges for conduct spanning weeks, the appeal centers on an offense that occurred on July 20, 2005—possession of marijuana with intent to distribute. Officer Michael Sexton met with a confidential informant, Stephen Burrow, and his acquaintance,

"J.T.," on that date for a controlled purchase of an ounce of marijuana from a targeted drug dealer. Officer Sexton, Burrow, and J.T. met the dealer and followed him by car to his residence. Officer Jerry Carpenter followed at a distance to provide surveillance. While Burrow and J.T. went inside for the drug buy, Officer Sexton remained in the car listening to the exchange via Burrow's body wire.

Several government witnesses identified Vaughn as the drug dealer. Officer Carpenter recognized Vaughn's appearance, voice, and Ford Explorer from an undercover deal involving Sexton, Burrow, and J.T. about a week earlier. Officer Sexton also knew Vaughn on sight and by voice from earlier interactions, identifying him as the same person that took Burrow and J.T. inside the residence and the same person on the audio recording taken inside the residence. Officer Sexton testified that he twice observed Vaughn leave the residence, first to get a set of digital scales and then to get a bag of money. Furthermore, Burrow identified Vaughn after the transaction as the person who sold him marijuana, albeit by photograph because he did not know Vaughn by name. (Although Burrow could recognize Vaughn on sight, he thought he went by the name "Ricky Brinkley.")

\* \* \*

Initially, the government charged Vaughn with two offenses unrelated to this July 20, 2005 transaction. The first indictment charged him with being a felon in possession of a firearm, under 18 U.S.C. §§ 922(g)(1) and 924. A superseding indictment added one count of possession of cocaine, cocaine base, marijuana, and methylenedioxymethamphetamine with intent to distribute,

in violation of 21 U.S.C. § 841(a)(1).  With regard to these two counts, the government sought to introduce evidence of a prior conviction for possession of marijuana with intent to distribute and other evidence of prior bad acts (including not only the July 20, 2005, transaction described above, but also two other drug transactions from that same year).  The district court granted Vaughn's motion in limine to exclude the evidence.  A deadlocked jury then prompted the court to order a mistrial.

About a month later, the government filed a second superseding indictment adding three charges matching the three drug transactions excluded from the mistried case:  1) possession of marijuana with intent to distribute on July 11, 2005 (Count 3); 2) possession of marijuana with intent to distribute on July 20, 2005 (Count 4); and 3) possession of cocaine base with intent to distribute on September 10, 2005 (Count 5).  Vaughn moved to dismiss the new counts on grounds of pre-indictment delay and vindictive prosecution.  Denying any dilatory intent in bringing the new charges, the government explained that re-evaluation of the evidentiary shortcomings of the earlier trial prompted its filing.  It viewed the inclusion of these counts as another way to introduce evidence of the transactions that the court excluded in the previous trial.  After concluding that Vaughn could not establish substantial prejudice, the court denied the motion to dismiss but granted his request to sever the new counts from the old ones.  At the second trial, Vaughn renewed his motion to dismiss when the government presented the new counts.  The court denied the motion, relying on the fact that the prosecution brought the charges within the statute of limitations.  A jury acquitted Vaughn on the two older counts, another jury reached a guilty verdict on Count 4 (i.e., the new count

involving the July 20, 2005, transaction at issue in this appeal), and the court again declared a mistrial of the remaining counts.

\* \* \*

At the sentencing hearing on Count 4, the court applied the career offender guideline under § 4B1.1(b)(E) of the 2008 United States Sentencing Guidelines Manual ("U.S.S.G."), because Vaughn's controlled substance conviction carried a statutory maximum of ten years or more and Vaughn had two or more prior convictions involving serious drug offenses. Rejecting Vaughn's request to depart or vary from the guideline range of 100 to 120 months, the court sentenced him to 100 months' imprisonment.

Vaughn challenges two decisions of the district court. He appeals the denial of his motion to dismiss the new counts in the second superseding indictment, arguing that the three-year and five-month delay between the time of offense and the filing of the second superseding indictment violated his Fifth Amendment due process right. (Because the jury only found Vaughn guilty of Count 4, Vaughn limits his challenge of the superseding indictment to that count.) He also appeals the district court's refusal to depart or vary from the sentencing guidelines, arguing that the career-offender guideline, as applied to a street-level dealer, results in a substantively unreasonable sentence.

II.

"In reviewing a motion to dismiss an indictment, we review the district court's legal conclusions de novo and its findings of fact for clear error or abuse of discretion." *United States v. Utesch*, 596 F.3d 302, 306 (6th Cir. 2010). We review the determination of pre-indictment delay de novo because it "raises a mixed question of law and fact." *United States v. Brown*, 498 F.3d 523, 527 (6th Cir. 2007) (citing *United States v. Sanders*, 452 F.3d 572, 576 (6th Cir. 2007)).

In denying dismissal, the district court appeared to rely on the statute of limitations to conclude that no constitutional violation occurred. But "the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment." *United States v. Marion*, 404 U.S. 307, 324 (1971). Rather, "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that . . . pre-indictment delay . . . . caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Rogers*, 118 F.3d 466, 474-75 (6th Cir. 1997) (quoting *Marion*, 404 U.S. at 324) (internal quotation marks omitted); *see United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009) ("[I]n order to establish a due process violation, the defendant must show that the delay 'caused him *actual* prejudice in presenting his defense.'" (quoting *United States v. Gouveia*, 467 U.S. 180, 192 (1984))). Because violations of the Due Process Clause may occur even within the limitations period, we address de novo the two elements of the constitutional test: actual prejudice and tactical intent.

A. Absence of Prejudice

"The standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *Rogers*, 118 F.3d at 477 n.10 (citing *United States v. Mays*, 549 F.2d 670, 682 (9th Cir. 1977) (Ely, J., dissenting)). Vaughn contends that he suffered actual prejudice in three ways, each separately analyzed below.

1. Missing Witness

Vaughn posits that the pre-indictment delay prevented him from tracking down J.T. as an eyewitness for his trial. His theory goes: because the police knew J.T.'s phone number at the time of the transaction, and Officer Sexton knew where to drop off J.T. after the transaction, Vaughn could have found J.T. had he been indicted earlier. Vaughn speculates that, if found, J.T. might have presented exculpatory identification testimony to support Vaughn's account that J.T., Burrow, and Officer Sexton dealt not with Vaughn but with another man, Brinkley.

Even assuming that the delay prevented Vaughn from locating J.T., Vaughn cannot show that J.T.'s absence from trial actually or substantially prejudiced him. Vaughn can only speculate as to whether J.T.'s testimony would support his account of the facts as opposed to the government's. No evidence suggests that J.T. would have identified someone other than Vaughn as the drug dealer. *See Rogers*, 118 F.3d at 475-76 (affirming district court's conclusion of no actual substantial prejudice where missing witness's testimony "unlikely . . . [to] have affected the outcome of the

trial," after evaluating several cases where courts deemed testimony indefinite or speculative); *United States v. Duncan*, 763 F.2d 220, 222-23 (6th Cir. 1985) (concluding that defendant failed to show actual prejudice where he did not indicate "how the witness would have aided the defense or what exculpatory testimony would have been offered" (internal quotation marks and alterations omitted)); *cf. United States v. Banks*, 27 F. App'x 354, 357 (6th Cir. 2001) ("[B]are assertions, without supporting evidence, are not sufficient to demonstrate prejudice."). This argument fails.

## 2. No Indications of Exculpatory Nature of Destroyed Evidence

Vaughn next argues that the pre-indictment delay resulted in the prejudicial loss of key evidence: the destruction of the marijuana from the July 20 transaction. "A violation of [the Due Process Clause] requires some showing that the evidence lost would be both material and favorable to the defense," however. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982). Vaughn complains that his own expert never had an opportunity to test the marijuana from the transaction, yet he fails to show that such testing would prove favorable. *See United States v. Brown*, 667 F.2d 566, 568-69 (6th Cir. 1982) (affirming conviction where defendants failed to demonstrate that destruction of evidence during delay substantially prejudiced them). At oral argument, Vaughn's counsel admitted that Vaughn objected to the test results solely because of his general distrust for the government rather than case-specific concerns. Because nothing in the record supports Vaughn's theory that the destroyed evidence would have favored him, we find no prejudice.

### 3. Loss of Memory

Vaughn last claims that the pre-indictment delay impaired Burrow's memory at trial. As evidence, he points to Burrow's inability at trial to remember that someone showed him a photograph of Vaughn (and only Vaughn's photograph) before Burrow identified Vaughn as the drug dealer. Vaughn deduces from this that the court should also question Burrow's memory on other details, such as his ability to recall the appearance of the drug dealer without the aid of a photograph.

"[L]oss of memory is an insufficient reason to establish prejudice," however. *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003); *see also Payne v. Rees*, 738 F.2d 118, 121-22 (6th Cir. 1984) (agreeing with trial judge that defendant failed to make "difficult and necessary initial showing of actual prejudice" even though delay caused defendant to rely on memories of others to recall details in support of his alibi). As *Duncan* explained, the due process inquiry traces back to the question whether a delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency," 763 F.2d at 222 (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)) (internal quotation marks omitted). The possibility that "memories will dim . . . [is] not in [itself] enough to demonstrate that [defendant] cannot receive a fair trial and to therefore justify the dismissal of the indictment," *id.* (quoting *Marion*, 404 U.S. at 325-26).

As in *Duncan* and in *Marion*, the prejudice Vaughn alleges falls short of triggering "fundamental conceptions of justice." Not only does the statute of limitations contemplate the

government bringing cases within five years, *see* 18 U.S.C. § 3282, but the particular lapses in memory that Vaughn faults only affect peripheral issues. Even if Burrow were to recall exactly what Vaughn hoped he would—that he saw a photograph of Vaughn before identifying him as the drug dealer—that evidence, viewed in context, suggests nothing more than that Burrow needed the photograph because he did not know Vaughn's name and could not identify him except by photograph.

Moreover, other testimony corroborates Vaughn's involvement in the July 20 transaction. For example, Officer Carpenter testified that he recognized the voice in the audio recording of the July 20 transaction as Vaughn's, and that he observed Vaughn driving his car to the July 20 transaction. Officer Sexton recounted that he saw Vaughn drive to, enter, and leave the location of the transaction on July 20; recognized Vaughn's voice on the recording; and saw Vaughn retrieve digital scales and a bag of money from his vehicle. We therefore conclude that Burrow's inability to remember seeing the photograph did not prejudice his defense.

4. No Presumption of Prejudice Applies

Failing to demonstrate actual prejudice, Vaughn implores the panel to presume prejudice from the length of the delay, citing to *Doggett v. United States*, 505 U.S. 647, 658 (1992) (recognizing that a presumption of prejudice, though unspecified, may apply in a Sixth Amendment speedy-trial case involving an eight-and-a-half-year delay and other factors such as negligence). This court refused to apply the *Doggett* presumption to Fifth Amendment pre-indictment delay challenges

in *Schaffer*, noting that several Supreme Court cases support this position. *See Schaffer*, 586 F.3d at 425 (citing *Gouveia*, 467 U.S. at 192; *Lovasco*, 431 U.S. at 789; *Marion*, 404 U.S. at 326). *Schaffer* forecloses Vaughn's argument in this circuit. Vaughn's pre-indictment delay does not violate the Fifth Amendment, as he cannot show actual prejudice.

## B. No Tactical Intent to Benefit from the Delay

In the alternative, Vaughn's pre-indictment delay argument also fails because "[t]he burden is on the defendant to show 'that the delay between the alleged incident and the indictment was an intentional device on the part of the Government to gain a decided tactical advantage in its prosecution.'" *Schaffer*, 586 F.3d at 425-26 (quoting *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984)).

In an effort to carry that burden, Vaughn infers that, since the prosecution added counts to the superseding indictment only after the mistrial, the prosecution brought the new charges *because of* the mistrial. The government admits as much, but points out that nothing in the record suggests that it caused the *delay itself* for a tactical purpose.

"[A] defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (citing *United States v. DeClue*, 899 F.2d 1465, 1469 (6th Cir. 1990)). The government cited its re-evaluation after the mistrial and its hope to cure the evidentiary shortfall with the new charges

in the second superseding indictment. Consistent with this explanation, hardly a month passed between the mistrial and the filing of the second superseding indictment. The record supports the explanation that the delay came about merely as an incidental consequence of a permissible tactical decision to introduce evidence excluded in the previous trial. *See Lovasco*, 431 U.S. at 790 (cautioning that courts cannot "abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment"); *United States v. Roach*, 502 F.3d 425, 445 (6th Cir. 2007) (accepting government's explanation that it sought superseding indictment because of "reasoned re-evaluation of the evidence" after mistrial, after confirming the absence of an improper vindictive purpose); *United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2005) (concluding that "[t]he government's response to the mistrial—seeking a superseding indictment—was reasonable under the circumstances" because the motivation behind the superseding indictment came from a reassessment of its "manner of presenting evidence" post-trial, rather than an improper motive); *cf. United States v. Begay*, 602 F.3d 1150, 1156 (10th Cir. 2010) (concluding that no due process violation resulted from delay because "it was entirely proper" for the government to adjust its strategy in response to adverse evidentiary rulings, absent prosecutorial vindictiveness or prejudice).

\* \* \*

We affirm the district court's denial of the motion to dismiss because Vaughn fails to demonstrate that pre-indictment delay violated his Fifth Amendment rights.

III.

Vaughn also challenges the substantive reasonableness of the district court's sentence. "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (quoting *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009)) (internal quotation marks omitted). "In evaluating this issue, [the court] appl[ies] a presumption of reasonableness for within-Guidelines sentences," *United States v. Alexander*, 543 F.3d 819, 826 (6th Cir. 2008) (citing *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)), and "review[s] the sentence under an abuse-of-discretion standard," *Gall v. United States*, 552 U.S. 38, 51 (2007).

Vaughn argues that his criminal history category overrepresents the seriousness of his criminal history, such that the district court should have departed downward from the guidelines under U.S.S.G. § 4A1.3(b). "A district court's failure to grant a downward departure can only be reviewed by [the appellate court] if the lower court erroneously believed that it lacked authority to grant such a departure as a matter of law." *United States v. Lucas*, 357 F.3d 599, 609 (6th Cir. 2004) (citing *United States v. Owusu*, 199 F.3d 329, 349 (6th Cir. 2000); *United States v. Landers*, 39 F.3d 643, 649 (6th Cir. 1994)). The district court expressed that it was "fully aware it has the power to do a downward departure." We accordingly decline to entertain this argument.

Vaughn also faults the district court for refusing to vary from the calculated guideline range, raising three arguments. First, he contends that the disparity between the two-year Tennessee sentence for possession of hundreds of grams of marijuana and the 100-month federal sentence for possession of 17.7 grams of marijuana violates the imperative to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But this admonition applies only to "federal court to federal court disparities, not those that may exist between federal and state courts." *United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007) ("[I]t is impermissible for a district court to consider the defendant's likely state court sentence as a factor in determining his federal sentence.").

Second, Vaughn argues that adherence to the career offender guideline results in a punishment greater than necessary to punish a street-level offender. Essentially, Vaughn presents a futility argument, asserting that applying the career-offender guideline to low-level drug dealers serves no deterrence purpose, because other low-level drug dealers will emerge to take their place. Our circuit does not countenance such arguments. *See, e.g.*, *Alexander*, 543 F.3d at 826 ("[T]his argument proves too much, suggesting that all similarly situated drug dealers should receive below-Guidelines sentences because there will always be others eager to replace them. [The defendant's] rationale is bereft of legal support, and the district court committed no substantive error in rejecting it."); *see also United States v. Hardge*, 428 F. App'x 511, 515 (6th Cir. 2011) (noting that other defendants have made policy arguments regarding the ineffectiveness of sentencing street-level dealers as career offenders to no avail). Although we uphold a departure from the career

offender designation where the district court found a large disparity between the punishments in prior convictions and the sentence in question, *see, e.g.*, *United States v. Washington*, Nos. 00-3389, 00-3392, 2001 WL 1301744, at *5 (6th Cir. Aug. 8, 2001), where a district court declines to vary, we also uphold that decision as within the court's discretion.

Third, Vaughn urges that the career offender guideline range of 100 to 120 months overstates his circumstances because but for the career offender status his sentencing range would have been 18 to 24 months. The district judge articulated the valid reasons for not varying downward:

> My view is that the guideline range while advisory is the appropriate range based on Mr. Vaughn's criminal history, fully recognizing that the amount of drugs in this case is not large; it is small. But sentencing is more than just the offense conduct. It is the totality of someone's history. In this instance, criminal history is very significant.

The court's statement acknowledges Vaughn's central complaint against the application of the career offender guideline—that he was just a small-quantity dealer. Vaughn points to no other individualized circumstances or factors that the district court overlooked. Because the district court arrived at a sentence at the low end of the career offender guideline range after reasonably weighing the small quantities involved against the frequency of the offenses, we conclude that Vaughn does not rebut the presumption of reasonableness that attaches to the sentence.

IV.

We AFFIRM.