**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0871n.06

**No. 11-1518**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

***Aug 09, 2012***

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| MICHAEL MONTGOMERY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Michael Montgomery appeals his convictions by a jury of being a felon in possession of a firearm and possession with intent to distribute crack cocaine, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and 21 U.S.C. § 841. Specifically, he challenges the sufficiency of the evidence underlying both offenses, the admission of a law enforcement officer's expert testimony regarding the modus operandi of drug dealers, and the district court's denial of his motions to suppress evidence and to dismiss the superseding indictment. For the reasons set forth below, Montgomery's claims are without merit, and we therefore affirm the district court's judgment.

I.

On the evening of January 31, 2008, seven officers from the Flint, Michigan, Police Department ("FPD") executed a search warrant at 3072 Roanoke Street in Flint. The FPD team was

led by Sergeant Frank Sorensen, a twenty-three-year veteran of the force. When no one answered the door, the officers entered the home by ramming a side door. Sergeant Wayne Suttles, the first officer to enter the home, saw Montgomery in the kitchen. When Suttles announced "police, police," Montgomery turned and ran down a hallway and into the bathroom. Sergeant Suttles followed and saw Montgomery throw something into the toilet and reach for the handle in an attempt to flush it. But before he could do so, Suttles tackled him, and they fell into the shower area. Suttles managed to handcuff Montgomery, stood him up, and led him out of the bathroom. Sergeant Suttles returned to the bathroom, where he retrieved a plastic bag containing two individually packaged rocks of crack cocaine from the toilet and a plastic baggie containing marijuana from the shower.

Montgomery was arrested and placed in a room of the house while the officers searched the entire premises. Montgomery was the only person found there. The small two-bedroom home was fully furnished and appeared to be lived in. In the living room, the officers discovered a still-smoldering, half-smoked marijuana cigarette and a small amount of marijuana on a coffee table next to a chair that faced the television. The television was turned on and the remote control was on the floor next to the chair. The officers found two unloaded revolvers underneath the seat cushion of the chair. In the kitchen were two digital scales, one with suspected (and later confirmed) powder cocaine residue on it, and a box of plastic baggies. The police also searched Montgomery and found a small baggie of powder cocaine and $281 in cash in his pants pockets.

The officers transported Montgomery to the police station where, at 10:20 p.m., Sergeant Sorensen commenced an interview in his office with Montgomery. Sergeant Sorensen first

ascertained that Montgomery was literate, that he understood the reason for his arrest, and that he was not under the influence of drugs or alcohol. At 10:25 p.m., Sergeant Sorensen advised Montgomery of his *Miranda* rights, but Montgomery waived his rights and continued the interview.

Montgomery told Sergeant Sorensen that when he first moved to Flint from Detroit in November 2007, he sold a few "balls" of cocaine from a house on Russell Street where he stayed. He named and described his two suppliers—"Cig" and "Tone"—from Detroit. According to Sergeant Sorensen, Montgomery volunteered to "do" his suppliers, and Sorensen responded by advising Montgomery that if he wished to cooperate, he would "have to write out a statement taking responsibility for what [he] did up there on Roanoke." Montgomery agreed and proceeded to handwrite the following statement:

> I, Michael Montgomery, take full responsibility for my actions on January 31, 2008 for the two guns, not loaded[,] a sack of weed and crack cocaine I received. I come down with Cig and Tone to hustle and make money on Russell Street. I sell about one ounce crack cocaine a week, about $900 worth a week.

Montgomery signed and dated the statement, as did Sergeant Sorensen, who then terminated the interview at 11:05 p.m., immediately after Montgomery made the confession. Pending further investigation, Montgomery was released that same evening without being charged, despite the fact that he had outstanding warrants for his arrest.

In March 2009, a federal grand jury issued a one-count indictment charging Montgomery with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Montgomery moved unsuccessfully to suppress his written statement, arguing that it was the product of police coercion. Subsequent plea-bargaining proved to be unsuccessful and, on August 18, 2010,

a grand jury issued a first superseding indictment charging Montgomery with an additional count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841. The new count was based on the crack cocaine seized from the Roanoke residence during the January 31, 2008, raid.

The district court denied Montgomery's Rule 48(b) motion to dismiss the first superseding indictment, and a two-day jury trial ensued in February 2011. The parties stipulated that Montgomery was a convicted felon, that the firearms traveled in interstate commerce, and that the seized crack cocaine and marijuana were controlled substances. The remaining issues to be tried to the jury were whether Montgomery constructively possessed the two firearms discovered underneath the chair cushion at the Roanoke residence and whether he intended to distribute the .4 grams of crack cocaine retrieved from the toilet by Officer Suttles.

At the trial, the government called as its witnesses the officers who participated in the execution of the search warrant. Sergeant William Meyer, an experienced FPD officer, testified on behalf of the government as an expert in the sale and distribution of illegal drugs. At the close of the government's case-in-chief, Montgomery moved for a judgment of acquittal based on the insufficiency of the evidence. The court reserved its ruling, but ultimately denied Montgomery's motion. The defense rested without calling any witnesses, and the jury convicted Montgomery on both counts. In April 2011, the district court sentenced Montgomery to concurrent terms of 190 months in prison. Montgomery timely appeals his convictions.

II.

Montgomery contends that his written statement was the product of police coercion and should have been suppressed. He argues that, during the interview, Sergeant Sorensen told him that he could go home only if he took responsibility for the weapons, meaning that his confession was a prerequisite to his release or leniency. Montgomery does not allege any other coercive conduct—physical or psychological—on the part of Sergeant Sorensen or the FPD.[1]

"On appeal from a motion to suppress, we review a district court's factual findings for clear error and its legal conclusions de novo." *United States v. Jones*, 673 F.3d 497, 501 (6th Cir. 2012). There are three requirements for finding that a defendant's confession was involuntary due to police coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; (iii) and the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Stokes*, 631 F.3d 802, 808 (6th Cir. 2011) (citation and internal quotation marks omitted). The government bears the burden of demonstrating by a preponderance of the evidence that Montgomery's confession was voluntary. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003).

We have recognized that, in certain circumstances, "[p]olice promises of leniency and threats of prosecution can be objectively coercive." *Id.* at 261. Generally, however, promises of leniency are coercive only "if they are broken or illusory," *id*. at 262, and "promises to recommend leniency or speculation that cooperation will have a positive effect do not make subsequent statements

---

[1] It is undisputed that Montgomery was not handcuffed or physically restrained during the forty-five minute interview, and, by his own admission, it was conducted in a conversational tone.

involuntary." *United States v. Delaney*, 443 F. App'x 122, 129 (6th Cir. 2011) (citation and internal quotation marks omitted).

At the suppression hearing, Montgomery and Sergeant Sorensen offered different versions of what was said during the interview. Sergeant Sorensen testified unequivocally that he made no promises to induce Montgomery's statement. He neither asked for Montgomery's cooperation nor promised Montgomery that he would be released, given leniency, or that the charges would be dismissed in exchange for a statement. Instead, according to Sergeant Sorensen, Montgomery brought up the possibility of cooperating by offering to "do" his suppliers. Sergeant Sorensen's response, based upon his personal policy, was that Montgomery must first "take responsibility" for his conduct. Sergeant Sorensen testified that he did not give Montgomery any further direction regarding what "taking responsibility" entailed—that is, he did not tell Montgomery what to write in his statement.

Montgomery's testimony at the suppression hearing was less certain. He initially testified that Sergeant Sorensen told him that "if I took responsibility for the weapons, that I can go home." On cross-examination, however, he could not recall whether Sergeant Sorensen told him that he would not be released if he did not cooperate, and he later admitted that Sergeant Sorensen did not tell him that if he did not give a statement, he would be going to jail for a long time. It was simply Montgomery's "understanding" that Sergeant Sorensen would not give him a chance to "work off" the firearms charge unless he made a statement in which he took responsibility for the revolvers found under the chair cushion. No evidence was introduced showing if or how Montgomery

cooperated with the police after his interview with Sergeant Sorensen.

The district court credited Sergeant Sorensen's testimony over that of Montgomery, noting that Sergeant Sorensen had a better recollection of the interview and no motive to fabricate his testimony, whereas Montgomery had a "clear motive" to do so in order to avoid criminal charges. Based upon this credibility determination, the court found that "[Sergeant] Sorensen did not promise [Montgomery] freedom or eventual leniency in exchange for his statement. Instead, [Montgomery's] statement was motivated by his own desire to cooperate."[2] The court concluded that Montgomery's statement was not the product of coercive police conduct. According "considerable deference" to the district court's credibility findings, we agree. *United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008) (citation and internal quotation marks omitted).

Contrasted with Sergeant Sorensen's unwavering testimony (corroborated by his notes taken during the interview) that he made no promises contingent upon a confession, Montgomery's nebulous "understanding" that he must "t[ake] responsibility for the weapons" so that he could "go home" falls far short of the objective evidence of coercion necessary to suppress his statement, particularly when his status as a seasoned career offender is taken into consideration. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (factoring in the defendant's prior experience with the criminal justice system and resultant appreciation of the lessons of that experience in holding that

---

[2]A magistrate judge conducted the evidentiary hearing and issued a report and recommendation ("R & R") proposing that Montgomery's motion to suppress the evidence be denied for, inter alia, lack of objective evidence of coercive police conduct. The district court issued an opinion and order in which it adopted the R & R in its entirety.

his confession was not coerced). As was the case in *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992), "we find nothing in the discussion between [Sergeant Sorensen and Montgomery] rising to the level of an irresistible inducement that would render the confession involuntary," and "[n]othing in the record indicates that [Montgomery] was especially sensitive to pressure, that he had been physically abused, or that his emotional or psychological equilibrium had been upset by his treatment at the hands of officials." *Id*. at 411. Quite to the contrary, the record fully supports the district court's conclusion that Montgomery made the confession in order to market his information to the police for his personal benefit, "not [as] the result of illegitimate efforts to coerce [him] to confess." *Id*. In any event, any alleged promise to release Montgomery if he gave a statement was not illusory, because he was released following the interview. The district court, therefore, did not err in denying Montgomery's motion to suppress.

III.

Next, Montgomery reasserts the sufficiency-of-the-evidence claims originally made in his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. We review this issue de novo, "examin[ing] the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "When engaged in this analysis, we are bound to make all reasonable inferences and credibility choices in support of the verdict." *Id*. "[A] defendant claiming insufficiency of the evidence bears a very heavy burden" which, in this case, Montgomery has not met. *United States v. Abboud*, 438 F.3d 554, 589

(6th Cir. 2006) (citation and internal quotation marks omitted).

With regard to the contested element of Montgomery's constructive possession of the firearms found at the Roanoke residence, this is not, as he would have it, a case in which the evidence establishes only his "mere proximity" to the firearms. Under 18 U.S.C. § 922(g)(1), "constructive possession may be proven if the defendant merely had dominion over the premises where the firearm is located." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (citation and internal quotation marks omitted). Although "'[p]resence *alone*' near a gun . . . does not show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive possession," the existence of "other incriminating evidence . . . [may] tip the scale in favor of sufficiency." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) (citation and internal quotation marks omitted). Consequently, "evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice." *United States v. Newsom*, 452 F.3d 593, 610 (6th Cir. 2006) (citation and internal quotation marks omitted).

Here, such additional evidence exists in the form of Montgomery's confession, in which he "[took] full responsibility for [his] actions on January 31, 2008, for the two guns not loaded[.]" Tellingly, Montgomery "took responsibility" for the *unloaded* guns, a fact not conveyed to him by the police before he gave his statement. Moreover, during the booking process and his interview, he gave 3072 Roanoke as his current address. And the jury could reasonably infer from the evidence that, immediately before the police entered the house, Montgomery had been sitting in the living

room chair with the guns tucked in the cushion underneath it. Thus, there is ample evidence that Montgomery exercised the requisite dominion and control over the firearms found in the house in which he was, at the time of arrest, the sole occupant. *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010); *Grubbs*, 506 F.3d at 439; *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005); *United States v. Whitehead*, 415 F.3d 583, 588-89 (6th Cir. 2005).[3]

The evidence was likewise sufficient to support Montgomery's conviction for possession with intent to distribute cocaine. "The government [is] not required to establish any specific quantity, or any intent to distribute a specific quantity, in order to establish guilt of possession with intent to distribute" under 21 U.S.C. § 841(a). *McPhearson v. United States*, 675 F.3d 553, 561 (6th Cir. 2012) (citing *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003)). To determine intent to distribute drugs, a court can look to a number of factors: "the possession of quantities of drugs too large for personal use; the value of the drugs; the presence of drug distribution paraphernalia, including scales and packaging materials; the concurrent seizure of large amounts of currency; and the purity of the drugs." *United States v. Burton*, 440 F. App'x 474, 477 (6th Cir. 2011) (citation and internal quotation marks omitted).

Here, despite the relatively small quantity of crack cocaine retrieved from the toilet, a rational

---

[3]Montgomery argues that there was no fingerprint testing performed on the firearms and no evidence regarding ownership of the guns. However, there is no requirement that the firearm be registered in the felon's name or that the felon's fingerprints be on the firearm in order to sustain a conviction under § 922(g)(1). *United States v. Thompson*, 361 F.3d 918, 923 (6th Cir. 2004) and *United States v. Martin*, 399 F.3d 750, 754 (6th Cir. 2005). Montgomery's argument bears upon the weight, not the sufficiency, of the evidence.

trier of fact could have found, beyond a reasonable doubt, that Montgomery possessed the cocaine with intent to distribute it. The baggie found in the toilet contained two individually wrapped rocks of cocaine, each weighing .2 grams and worth approximately ten dollars apiece. Montgomery admitted not only receiving crack cocaine, but also to "sell[ing] about one ounce crack cocaine a week, about $900 worth a week." Packaging material and two digital scales—one of which field-tested positive for cocaine—were found in the home, yet there was no paraphernalia indicating Montgomery's personal use. As Sergeant Meyer testified, the packaging and "dime" amount of the crack cocaine were consistent with distribution, as was the presence of the guns for protection. The totality of these circumstances supports the jury's verdict. *United States v. Harris*, 192 F.3d 580, 589 (6th Cir. 1999); *United States v. Rodriguez*, 882 F.2d 1059, 1063 (6th Cir. 1989).

IV.

Montgomery contends that the district court erred in admitting the testimony of FPD Sergeant William Meyer, a twenty-year veteran FPD officer, who testified as the government's expert regarding the means, methods, and techniques of illegal drug sales and distribution. Sergeant Meyer was one of the officers who executed the search warrant at 3072 Roanoke on January 31, 2008. Although defense counsel did not dispute Meyer's qualifications, she argued in support of her pretrial motion in limine that Meyer's testimony was unnecessary and would effectively usurp the jury's function on the close question of intent to distribute the small quantity of cocaine involved in this case. The district court denied the motion, finding that the testimony would be helpful to a lay juror. The court then gave a cautionary instruction to the jury on the dual roles of a law enforcement

officer as a fact witness and as an expert witness, *see generally United States v. Lopez-Medina*, 461 F.3d 724, 743-44 (6th Cir. 2006), and defense counsel expressed satisfaction with the instruction.

"Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror." *Lopez-Medina*, 461 F.3d at 742 (citation and internal quotation marks omitted); *see also United States v. Ham*, 628 F.3d 801, 805 (6th Cir. 2011) (holding that a federal agent's expert testimony regarding the characteristics of crack cocaine and the methods of its distribution was admissible and "highly relevant" in helping the jury resolve the central issue of whether the defendant possessed crack cocaine with intent to distribute) (citation and internal quotation marks omitted); *Swafford*, 385 F.3d at 1030 ("Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman.") (citation and internal quotation marks omitted).

Federal Rule of Evidence 704(b) states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." The central concern under this rule is "whether the expert actually referred to the intent of the defendant or, instead, simply described in general terms the common practices of those who clearly do possess the requisite intent, leaving unstated the inference that the defendant, having been caught engaging in more or less the same practices, also possessed the requisite intent." *Combs*, 369

F.3d at 940 (quotation omitted). As was the case in *Combs*, the record shows that Sergeant Meyer "did not actually testify regarding the intent of the defendant to distribute drugs. Rather, he testified regarding conduct that would be consistent with an intent to distribute and left to the jury the final conclusion regarding whether the defendant actually possessed the requisite intent." *Id.* Accordingly, the district court did not abuse its discretion in permitting Sergeant Meyer's testimony.

V.

Montgomery unsuccessfully sought to dismiss the first superseding indictment pursuant to Federal Rule of Criminal Procedure 48(b), arguing that he suffered substantial prejudice and a violation of his due process rights because of the government's intentional delay in bringing the drug-distribution charge. He asserts that he was prejudiced by the delay in two ways—he was unable to locate two potential witnesses, and he spent a considerable amount of time formulating a defense based solely upon the original firearm-possession charge.

"[T]he Due Process Clause of the Fifth Amendment protects against oppressive pre-indictment delay," but dismissal is called for "only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009) (citation and internal quotation marks omitted). "The standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997). "Witness unavailability constitutes prejudice only if the defendant shows that the delay relates to the witness's absence." *United States v. Thomas*, 404 F.

App'x 958, 961 (6th Cir. 2010) (citation and internal quotation marks omitted). "[B]are assertions, without supporting evidence, are not sufficient to demonstrate prejudice." *United States v. Vaughn*, 444 F. App'x 875, 879 (6th Cir. 2011) (citation and internal quotation marks omitted).

Although Montgomery alleged in his motion to dismiss that there were "possible witnesses," whereabouts unknown, who would provide exculpatory testimony at trial if they could be located, he did not identify these witnesses until the first day of his trial. As it turns out, the potential witnesses were two women who allegedly were the renters of the house on Roanoke Street at the time of the January 2008 raid. It was Montgomery's theory that these witnesses would testify that he was merely a social invitee in the home on the day in question; however, whether he rented, lived in, or owned the residence is neither determinative of his guilt or innocence on both counts nor exculpatory in nature. Montgomery offered no insights into his steps taken to locate these witnesses or how the delay in issuing the superseding indictment corresponded to their inability to testify. The district court did not err in finding the claim to be speculative.

Likewise, Montgomery's claim that preparation of his defense was compromised by the belated addition of the cocaine charge rings hollow. Both counts stemmed from the same event, and the drug-distribution charge was based upon information that was known to Montgomery from the date of his arrest.

Nor is there any merit in Montgomery's contention that the pre-indictment delay was an intentional device used by the government to gain a tactical advantage and that the cocaine count was the product of prosecutorial vindictiveness. "[T]he ongoing effort by the government to reach a plea

agreement with [defense] counsel before filing an indictment . . . constitutes a valid reason for the delay." *United States v. Beigali*, 405 F. App'x 7, 14 (6th Cir. 2010). Although "prosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pre-trial assertions of protected rights[,] . . . if the charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citing *United States v. Andrews*, 633 F.3d 449, 454, 456 (6th Cir. 1980) (en banc), and *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

After Montgomery's March 2009 indictment on the firearms charge, the parties engaged in plea negotiations, but Montgomery rejected two Rule 11 plea agreements offered by the government. It was only after his rejection of the second agreement in August 2010 that the government sought to add the drug-distribution charge through the issuance of a superseding indictment, which was forthcoming on August 18, 2010. There is no due process violation arising out of these circumstances, where the plea bargaining failed, not for want of the government's efforts. *United States v. Wade*, 266 F.3d 574, 584-85 (6th Cir. 2001); *United States v. Wells*, 211 F.3d 988, 1001-1002 (6th Cir. 2000).

## VI.

For the above reasons, we affirm Montgomery's convictions.