NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0196n.06

No. 20-1525

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | Apr 16, 2021 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| PARIS HILL, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendant-Appellant. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |

BEFORE: GIBBONS, WHITE, and READLER, Circuit Judges.

CHAD A. READLER, Circuit Judge. Paris Hill was charged with participating in an alleged drug-distribution conspiracy. Following a three-day bench trial, the district court found Hill guilty of conspiracy to possess with intent to distribute one kilogram or more of heroin and 500 grams or more of cocaine, as well as being a felon-in-possession of a firearm. On appeal, Hill challenges the sufficiency of the evidence underlying those convictions. Because there is sufficient evidence to support the district court's findings and ultimate conclusions of guilt, we affirm.

**BACKGROUND**

*Hill's Arrest.* Federal officers came across Hill in 2017 as part of an investigation into a Detroit-area drug operation. Officers initially identified Saul Santiago-Roldan as a major supplier of narcotics in the region. Upon obtaining a wiretap on Santiago-Roldan's cellphones, officers discovered frequent coded communications between Santiago-Roldan and Hill about selling

narcotics. A subsequent search of Santiago-Roldan's home uncovered more than three kilograms of heroin and one kilogram of cocaine.

On the basis of intercepted phone calls between Santiago-Roldan and Hill, officers obtained a warrant to search Hill's home for drugs as well as the cellphones used in the intercepted calls. There, officers discovered marijuana, a medical marijuana card, and the cellphones used to coordinate with Santiago-Roldan. They also found a loaded shotgun in Hill's basement.

*Hill's Trial.* A grand jury charged Hill and other co-conspirators with various drug-conspiracy and firearm charges. Hill went to trial on two counts: (1) conspiracy to possess with intent to distribute one kilogram or more of heroin and 500 grams or more of cocaine, and (2) being a felon in possession of a firearm. Hill waived his right to a jury trial and proceeded with a bench trial.

Key evidence at trial was admitted through a cooperating witness. The witness (who for anonymity reasons we refer to as "the Courier") testified that he knew Hill as "Pete" and had worked with him for four years. Typically, the Courier would come to Hill's home, or they would meet at a store, café, or parking lot, where the Courier would give Hill a backpack (containing either cocaine or heroin) in exchange for money. The Courier testified that he delivered a kilogram of cocaine to Hill "over ten" times, and a kilogram of heroin "three or four" times. According to the Courier, he had "coded" phone conversations with Hill and Santiago-Roldan; the Courier then detailed the coding system he used to discuss drug transactions.

To corroborate the Courier's testimony, the government introduced dozens of intercepted calls and texts between Hill and Santiago-Roldan capturing drug-trafficking planning and logistics. For example, during one call, Hill asked Santiago-Roldan, if he "got [his] new car yet, or no"; according to the Courier, car was code for cocaine. In a separate call, Santiago-Roldan asked Hill,

"[C]an you do something quick with the white girls? You know, you can move one real quick? . . . I got one right now for 31 bro." Hill in turn texted to potential buyers the number "33," which the Courier explained was a reference to the price of a kilogram of cocaine. One potential buyer responded, "Huh," to which Hill texted that "[h]e [h]as more G." All told, the government intercepted 42 calls between Hill and Santiago-Roldan, many of which, like the above examples, discussed the drug trade in thinly veiled code.

At the close of trial, the district court found Hill guilty on both counts. To the district court's eye, the evidence indicated that Hill participated in the conspiracy by purchasing and distributing cocaine and heroin for at least four years. The court found that "the agents who testified were very credible." And it found the Courier to be a "credible witness as it relates to the facts in this particular case," noting that the Courier's testimony was "consistent with" the recordings of Hill's conversations, agents' observations, and video surveillance. The court also found the shotgun's presence in the home to mean that Hill "exercise[d] control over that weapon," and thus possessed it.

## ANALYSIS

On appeal, Hill challenges the sufficiency of the evidence underlying both convictions. Because Hill appeals from a bench trial, we review the district court's factual findings for clear error. *United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020). We are bound by those findings unless we are left "with the definite and firm conviction that the district court made a mistake." *United States v. Ellis*, 938 F.3d 757, 761 (6th Cir. 2019) (quotations and internal citations omitted). Put another way, a finding "is not clearly erroneous simply because there is evidence in the record that might support a different" conclusion. *Vance*, 956 F.3d at 853 (quoting *United States v. Fruehauf Corp.*, 577 F.2d 1038, 1041 n.3 (6th Cir. 1978)). Likewise, we "defer to the district

court's credibility determinations absent reason to believe that they are clearly erroneous." *Id.* (quoting *United States v. Wright*, 747 F.3d 399, 409 (6th Cir. 2014)). Further, as to the court's ultimate verdict, we review it under an "any rational trier of fact" test. *Id.* In doing so, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Wright*, 774 F.3d at 1085, 1088 (6th Cir. 2014)).

**A. The Drug Conspiracy Charge.**

The district court found Hill to be guilty of participating in a conspiracy to sell cocaine and heroin. Hill refutes that conclusion, arguing that the government failed to demonstrate that he was anything more than a marijuana distributor. To prove that Hill conspired to possess with intent to distribute drugs in violation of 21 U.S.C. § 846, the government must show two things: (1) that Hill agreed to violate a drug law with one or more other individuals, and (2) that Hill knowingly and voluntarily entered into this agreement. *See, e.g.*, *United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021); *see also United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019) (noting that while some courts treat conspiracy as a three-element test, the difference between the three-element test and two-element test is merely "semantic").

1. Starting with the first prong, the government must show there was a "'meeting of the minds' that two or more people will jointly achieve a drug-distribution end." *Wheat*, 988 F.3d at 307. To reflect a voluntary agreement to sell drugs, Hill's "speech or conduct must show that [he] knew of the agreement's 'essential object' (even if not the details) and agreed to carry out that object." *Id.* (citation omitted). If proven, Hill is liable for any of the "reasonably foreseeable consequences of the unlawful agreement." *United States v. Hamm*, 952 F.3d 728, 744 (6th Cir. 2020) (internal quotations and alteration omitted) (quoting *Pinkerton v. United States*, 328 U.S.

640, 647–48 (1946)). The district court found that Hill and Santiago-Roldan "at least" agreed to distribute substances "and that there was a mutual understanding between [Hill] and [Santiago-Roldan] as well as [the Courier] as to" the distribution operations.

Two principles bear emphasizing at the outset. One, an agreement to violate drug laws need not be express or formal. *Potter*, 927 F.3d at 453. And two, such an agreement "can be inferred from repeated purchases of large quantities of drugs." *Id.* (quoting *United States v. Sills*, 662 F.3d 415, 417 (6th Cir. 2011)). Taking into account these two guideposts, we agree that a "rational trier of fact could have found" the existence of an agreement "beyond a reasonable doubt." *Vance*, 956 F.3d at 853 (quoting *Wright*, 774 F.3d at 1088). Officers testified in detail that Santiago-Roldan's operation involved cocaine and heroin, and the government presented evidence of regular phone calls and texts between Santiago-Roldan and Hill, evidence that together supports a finding that the two had a mutual understanding of their agreement to sell cocaine and heroin. In addition, wiretaps reflected conversations between Santiago-Roldan and Hill coordinating drug samples and looking to move "white girls" at "31" and "33." On top of that, the Courier testified to frequent conversations between the three. All told, ample evidence supported the district court's finding of "a mutual understanding between [Hill] and [Santiago-Roldan] as well as [the Courier] as to what was going on here."

The government also proved Hill's voluntary participation in the conspiracy, the charge's second prong. *Potter*, 927 F.3d at 453. The district court found that Hill "was essentially a distributor." Numerous communications between Hill and Santiago-Roldan (corroborated by the Courier) supported the finding: the Courier explained how Hill exchanged money for backpacks of cocaine and heroin, how Hill coordinated with Santiago-Roldan to test drug samples, and how the two used coded communications to discuss drug transactions. Collectively, these actions

support the court's finding of voluntary participation, as well as its broader conclusion that Hill conspired to possess with intent to distribute one kilogram or more of heroin and 500 grams or more of cocaine. *Vance*, 956 F.3d at 853.

2. Hill disputes this conclusion. His objections fall into two camps. First, that the government's evidence showed only that Hill participated in marijuana sales, not the broader conspiracy involving heroin and cocaine. And second, that the Courier's testimony lacked credibility. We take each in turn.

Hill first challenges the scope of his involvement in the conspiracy. He emphasizes that marijuana was the only drug found in his home. And he relies on statements by agents and the Courier that Santiago-Roldan dealt marijuana, sometimes in small amounts. In Hill's mind, these two points, taken together, at most prove that he dealt marijuana, but fall short of proving the Hill was part of a broad conspiracy to distribute heroin and cocaine.

True, marijuana was the only drug found in Hill's home. But to prove a drug conspiracy, the government need not prove that Hill possessed at his home the specific drug types and quantities charged. Instead, the government had to show that Hill was "party to the general conspiratorial agreement"—which he was, as already explained. *United States v. Abegunde*, --- F. App'x ---, 2021 WL 128938, at *7 (6th Cir. Jan. 14, 2021) ("[A] defendant need not 'be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement.'" (citing *United States v. Martinez*, 430 F.3d 317, 333 (6th Cir. 2005))). And as a voluntary participant, Hill can be liable for offenses committed by his co-conspirators alone, so long as those offenses: "(1) are done in furtherance of the conspiracy, (2) fall within the scope of the unlawful project, and (3) are reasonably foreseeable consequences of the unlawful agreement." *Hamm*, 952 F.3d at 744 (cleaned up) (quoting *Pinkerton*, 328 U.S. at 647–48). With this standard

in mind, the district court did not clearly err when it found that even though "[Hill] probably did not know the extent of the conspiracy," the drugs and quantities recovered from Santiago-Roldan's home were foreseeable because Hill's activities were "essentially" that of a distributor. Confirming as much, the Courier testified that he personally delivered backpacks of cocaine and heroin to Hill, reflecting Hill's knowledge of the broader conspiracy.

Hill also challenges the Courier's credibility. He emphasizes three reasons why the Courier's testimony should not be believed. One, that the Courier's involvement in distributions after Santiago-Roldan and Hill were arrested undermines the Courier's claims that he was merely a passive delivery person. Two, the Courier described Hill as someone in "good health," when, at the time, Hill was recovering from a serious gunshot wound. And three, agents never recovered the referenced backpacks, never saw the Courier at Hill's home, and never recovered any texts between Hill and the Courier to validate their relationship. To the extent Hill's challenges have force, however, they speak only to the Courier's credibility—a finding we typically do not (and often cannot) revisit on appeal. *See Vance*, 956 F.3d at 853 ("This court 'neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial.'" (quoting *United States v. Howard*, 621 F.3d 433, 460 (6th Cir. 2010))). And even were we to revisit that inquiry, the facts Hill highlights merely weigh against the district court's findings; they are not sufficient to undermine the totality of the evidence linking Hill to the conspiracy. *See Cooper v. Harris*, 137 S. Ct. 1455, 1468 (2017) (noting that "the very premise of clear error review is that there are often two permissible—because two plausible—views of the evidence" (internal quotations and citation omitted)). Hill's sufficiency of the evidence challenge to his conspiracy conviction accordingly fails.

**B. The Felon-in-Possession Charge.**

Nor did the district court err in finding that Hill was a felon who illegally possessed a firearm in violation of 18 U.S.C. § 922(g)(1)—specifically, the shotgun found in his basement. A conviction for this offense requires the government to prove that: (1) Hill was convicted of a felony; (2) Hill knew of that conviction at the time of possession; (3) Hill knowingly possessed a firearm; and (4) the firearm had traveled through interstate commerce. *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020). On appeal, Hill contests only the possession element. He argues that the absence of fingerprints on the gun precludes a factfinder from concluding that he possessed the firearm.

That argument fails. One constructively possesses a firearm when he "knowingly has the power and the intention at a given time to exercise dominion and control over an object." *United States v. Wilson*, 837 F. App'x 396, 398 (6th Cir. 2020) (quoting *United States v. Raymore*, 965 F.3d 475, 483 (6th Cir. 2020)). Here, the district court found that Hill constructively possessed the shotgun because he knew it was in his home, meaning he "had the ability or the right to control that particular weapon." When officers executed the search warrant on Hill's home, Hill informed them of the gun's whereabouts, explaining that his father had given it to him. Hill's acknowledgement of the gun's location and origin supports the district court's conclusion that Hill had the requisite knowledge and intention for constructive possession. True, Hill's fingerprints were not found on the gun. While that fact might undermine a finding of actual possession, it does not render the district court's finding of constructive possession clearly erroneous under the circumstances. *See United States v. Montgomery*, 491 F. App'x 683, 689 n.3 (6th Cir. 2012) (explaining that "there is no requirement . . . that the felon's fingerprints be on the firearm in order to sustain a conviction" for felon-in-possession); *see also United States v. Walker*, 734 F.3d 451,

455 (6th Cir. 2013) (explaining that constructive possession may be proven by direct or circumstantial evidence). The district court thus did not err in finding Hill guilty of this charge.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the district court.